366 So.2d 1299 (1978)
FIRST GUARANTY BANK
v.
C. D. ALFORD et al.
No. 62508.
Supreme Court of Louisiana.
December 15, 1978.
Rehearing Denied January 26, 1979.[*]
*1300 Ben R. Miller, Jr., Leonard L. Kilgore, III, Sanders, Downing, Kean & Cazedessus, for defendant-respondent.
Tom H. Matheny, Pittman & Matheny, Hammond, for plaintiff-applicant.
CALOGERO, Justice.
On April 30, 1973 Dr. C. D. Alford borrowed $155,000.00 from First Guaranty *1301 Bank and as evidence of the debt signed a promissory note payable one year thereafter. Among other security for the debt Dr. Alford had his wife encumber real estate which was her separate property. This was done by execution of a collateral mortgage note (a $155,000.00 demand promissory note payable to order of "ourselves" and duly endorsed in blank), a collateral mortgage and an act of pledge. Each of these latter three instruments was signed by both Dr. and Mrs. Alford. The collateral mortgage note and the collateral mortgage each contained a provision as follows:
DUE ON DEMAND. This is a collateral note secured by a collateral mortgage and may be placed as collateral security for any hand note or notes which shall govern the terms, time of payment, interest rate and all other conditions set forth therein. This note may be issued and re-issued without being extinguished by confusion, and its validity will not be affected by the fact that the original indebtedness for which it was issued is paid.
The act of pledge acknowledged a loan "represented by one certain promissory note of even date herewith in the amount of $155,000.00" and recited that Dr. and Mrs. Alford "do by these presents pledge as security for said note the following collateral, to wit:
"(1) One certain collateral note secured by a collateral mortgage in the amount of $155,000.00, dated April 30, 1973; . . ."
The collateral mortgage was duly recorded and both the collateral mortgage note (sometimes hereinafter referred to as the "ne varietur" note) and Dr. Alford's promissory note (sometimes hereinafter referred to as the "hand note") were given to the bank. The ne varietur note has thereafter remained in the possession of the bank. The hand note was cancelled and returned to Dr. Alford on May 28, 1974, his debt having been renewed upon execution of a promissory note for $195,000.00 on May 24, 1974.
There were executed after April 30, 1973 the following instruments, each of them signed by Dr. Alford only:
(1) A $195,000.00 promissory note dated May 21, 1974 payable June 21, 1974 signed by Dr. Alford, the note indicating that it was secured by "Collateral Pledge Agreement # 149."
(2) Collateral Pledge Agreement # 149 dated May 21, 1974 signed by Dr. Alford, by which he pledged and hypothecated unto the First Guaranty Bank of Tangipahoa Parish, among other securities,
"Act of Pledge dated April 30, 1973 $155,000.00 collateral mortgage dated 4-30-73 . . ."
(3) A $275,764.67 promissory note dated June 28, 1974 payable in one year signed by Dr. Alford, the note indicating that it was secured by "Collateral Pledge Agreement # 244."
(4) Collateral Pledge Agreement # 244 dated June 28, 1974 signed by Dr. Alford, by which he pledged and hypothecated unto the First Guaranty Bank of Tangipahoa Parish among other securities
"Act of Pledge dated April 30, 1974 $155,000.00 collateral mortgage dated 4-30-74 . . ."
(5) A $28,000.00 promissory note dated June 30, 1975 payable August 7, 1975 signed by Dr. Alford, indicated that it was secured by the "C.P.A. # 244."
When Dr. Alford defaulted on payment of his obligations the bank filed a petition against him and his wife, Mrs. Alford, in solido for the sums of $275,764.67 and $28,000.00 under respective promissory notes referred to hereinabove, together with the interest due thereon, attorney's fees and costs. In that petition the bank also contended that it was the holder of a collateral mortgage note dated April 30, 1973 executed by both defendants.
Mrs. Alford filed a motion for summary judgment seeking dismissal of the bank's claim against her on the two notes, and a petition for a writ of mandamus seeking to have the collateral mortgage cancelled. The trial judge rendered separate judgments granting relief as to both matters.
*1302 He dismissed the bank's claims against Mrs. Alford and issued the writ of mandamus directing the clerk of court to cancel the collateral mortgage. Both rulings were affirmed by the Court of Appeal. 359 So.2d 700 (La.App. 1st Cir. 1978). This Court granted writs. 360 So.2d 1349 (La.1978).
The bank in its assignment of errors complains that since genuine issues of material fact existed, the Court of Appeal erred in affirming summary judgment. It urges that Mrs. Alford was indeed personally liable on the obligation sued on, and contends that the Court of Appeal should not have affirmed the trial court's ordering the clerk of court to cancel the Alford collateral mortgage from the court records.
The latter contention, which attracts our chief interest in this opinion, was the claim which prompted our granting writs in this case.
In addressing the issue presented, a brief review of the character of collateral mortgages will be helpful. A mortgage is an accessory right which is granted to the creditor over the property of another as security for the debt. La.Civ.Code arts. 3278, 3284. Mortgages are of three types: conventional, legal and judicial. La.Civ. Code art. 3286. Within the area of conventional mortgages, three different forms of mortgages are recognized by the Louisiana statutes and jurisprudence: an "ordinary mortgage" (La.Civ.Code arts. 3278, 3290); a mortgage to secure future advances (La. Civ.Code arts. 3292, 3293); and a collateral mortgage. See Thrift Funds Canal, Inc. v. Foy, 261 La. 573, 260 So.2d 628 (1972). Unlike the other two forms of conventional mortgages, a collateral mortgage is not a "pure" mortgage; rather, it is the result of judicial recognition that one can pledge a note secured by a mortgage and use this pledge to secure yet another debt.
A collateral mortgage indirectly secures a debt via a pledge. A collateral mortgage consists of at least three documents, and takes several steps to complete. First, there is a promissory note, usually called a collateral mortgage note or a "ne varietur" note. The collateral mortgage note is secured by a mortgage, the so-called collateral mortgage. The mortgage provides the creditor with security in the enforcement of the collateral mortgage note.
Up to this point, a collateral mortgage appears to be identical to both a mortgage to secure future advances and an ordinary mortgage. But a distinction arises in the collateral mortgage situation because money is not directly advanced on the note that is paraphed for identification with the act of mortgage. Rather, the collateral mortgage note and the mortgage which secures it are pledged to secure a debt.
Clearly, the mortgage at issue in this matter is a collateral mortgage. On the face of both the collateral mortgage note and collateral mortgage is typed the following language:
"This is a collateral note secured by a collateral mortgage and may be placed as collateral security for any hand note or notes . . ."
A collateral mortgage note may be pledged to secure future obligations. In that event full payment of a given obligation will not extinguish the collateral mortgage note and accompanying mortgage. (And in such cases the collateral mortgage will have a ranking from the initial pledge. La.Civil Code, art. 3158.)
The question in this case is whether Mrs. Alford did in fact pledge her collateral mortgage note to secure any debt other than the $155,000.00 hand note executed by Dr. Alford on April 30, 1973. It is apparent to us that she did not.
The collateral mortgage note and collateral mortgage admittedly contained the identical provision quoted hereinabove by which Mrs. Alford acknowledged that the note may be placed as collateral security for any hand note or notes and that the note may be issued and reissued without being extinguished (and that its validity will not be affected by the fact that the original indebtedness for which it was issued is paid.)
That the note may be reissued does not require the conclusion that it was.
*1303 In fact the collateral note was not reissued (i. e. there was no second or subsequent pledge by Mrs. Alford of the note[1]) and it was not placed as collateral by Mrs. Alford for any hand note or notes other than the one specifically named in the only pledge agreement she signed, the $155,000.00 hand note executed by Dr. Alford on April 30, 1973.
That the collateral note was in effect a negotiable bearer instrument, a matter which we initially found troubling, is of no moment. It was not a debt instrument but a security device, a pledge instrument. And it was not properly pledged to secure either of the two obligations upon which the bank bases its suit.
The fact that the collateral mortgage note was bearer paper does not alter or affect Mrs. Alford's position in this case because Dr. Alford was never a holder of the collateral mortgage note (thus, neither by virtue of ownership nor possessory interest could he have pledged it, at least not after the April 30, 1973 Act of Pledge signed by his wife and himself) and the bank had full knowledge of the true ownership of the instrument, insofar as it represented Mrs. Alford's obligation, through the specially written pledge agreement. The bank came into possession of the collateral mortgage note by virtue of the Act of Pledge dated April 30, 1973, which clearly limited the pledge of the collateral mortgage note by Mrs. Alford to secure the specific obligation of Dr. Alford evidenced by the $155,000.00 hand note. When the obligation on the $155,000.00 hand note was extinguished, as it clearly was, the Bank continued to possess the collateral mortgage note as a mere depositary, fully cognizant of how and under what conditions and limitations it possessed the collateral mortgage note. Dr. Alford had no authority to repledge Mrs. Alford's collateral mortgage note for any other personal or community obligations, and the Bank as a party to the April 30, 1973 pledge agreement should have been fully aware that he had no such authority.
Mrs. Alford did not give the collateral mortgage note to Dr. Alford for his use in providing security for his obligations. To the contrary Mrs. Alford personally pledged the collateral mortgage note, her separate and paraphernal property, as security for a certain limited obligation. Without destroying the nature of the instrument as a collateral mortgage note Mrs. Alford could have done little more to limit the pledge than to recite in writing that the bank should accept the collateral mortgage note in pledge under the terms and conditions that the pledge secure the obligation on a certain debt note executed by Dr. Alford.[2]
The bank's retention of the collateral mortgage note after extinguishment of the ancillary debt note (or hand note), without either an outset pledge to secure future obligations or a subsequent pledge by the obligor on the collateral note (Ms. Alford, that is) gives the bank no security interest in the collateral mortgage note. If this were not the case any party, even with the bank's full knowledge of the circumstances and acquiescence therein, could pledge, without any interest therein, the collateral mortgage of another to secure his own obligation without the consent of the obligor on the collateral mortgage note, simply because the obligee-bank has possession of and has not returned a collateral mortgage note pledged on an earlier extinguished obligation. It goes without saying that this cannot be.
*1304 An analogous case is Durham v. First Guaranty Bank, La.App., 331 So.2d 563. There Mr. Durham executed a $20,000.00 collateral mortgage note which was pledged to secure a hand note of $3,500.00. The latter was later paid. The First Guaranty Bank retained, possession of the collateral mortgage note. The Bank contended that the collateral mortgage note also secured a $17,000.00 note of a partnership of which Mr. Durham was a member, but it was unable to point to an Act of Pledge of the collateral mortgage note to secure the latter debt. The court stated:
"However the $17,000 note sued upon in the instant case does not contain any such reference to the collateral mortgage and note. There is absolutely no connexity between it and the mortgage security."
* * * * * *
"The pledge of a collateral mortgage note to secure any indebtedness is a contract, LSA-C.C. Art. 3133. The pledge secures only that debt or debts contemplated in the contract between the pledgor and the pledgee, (citations omitted) (emphasis added).
* * * * * *
"Because of their very nature and function, security devices should be strictly construed . . . Yet even a liberal interpretation of the instant collateral mortgage and accompanying note would not convince this court that the note sued upon was connected to and secured by said collateral mortgage."
Nor are the provisions of Civil Code Article 3158[3] concerning retention and reissuance of the pledge instrument any comfort to the bank or any support for its position that retention alone of the item pledged here effects the continued viability of the pledge to secure any future obligations that might be contracted.[4] The pertinent part of Article 3158 applies only to obligations or liabilities of the pledgor to the pledgee. See underscoring in footnote 3. In the instant case the pledgor Mrs. Alford was not the obligor on the notes which the bank contends are secured by the pledged instrument.
Since Mrs. Alford's pledge of the collateral mortgage note recited that it was to secure only the $155,000.00 hand note of April 30, 1973 and no other past or future obligations of Dr. Alford, the bank cannot assert a security interest in the collateral mortgage note with respect to Dr. Alford's two obligations (promissory notes of $275,764.67 and $28,000.00) incurred on June 28, 1974 and June 30, 1975, respectively. For these reasons it was legally correct for the trial court to issue the writ of mandamus ordering cancellation of the collateral mortgage.
*1305 With respect to the propriety of the trial court's granting Mrs. Alford's motion for summary judgment, the rulings of the trial court and the Court of Appeal are also correct. Mrs. Alford has no personal liability on the two notes sued upon. She did not sign either of them. As the Court of Appeal observed, Mrs. Alford's only actions were the execution of (1) the collateral mortgage on her separate property, (2) the $155,000.00 collateral mortgage note (a conditional rather than primary obligation) and (3) the Act of Pledge of April 30, 1973. Inasmuch as Dr. Alford's $155,000.00 hand note (to secure which Mrs. Alford executed the three instruments comprising the collateral security) has been extinguished, there is no obligation on the part of Mrs. Alford in connection with the collateral mortgage note. And inasmuch as she is not a debtor on either of the two notes sued upon she may not be held personally liable thereon.

Decree
For the above and foregoing reasons the judgments appealed are affirmed at relator's cost.
AFFIRMED.
DIXON, J., dissents.
NOTES
[*] Dixon, J., would grant a rehearing.
[1] For a discussion of issuance and reissuance, see Nathan and Marshall, The Collateral Mortgage, 33 La.L.Rev. 497, 504-06 (1973).
[2] It has been suggested that Mrs. Alford, by delivering her collateral mortgage note (a bearer instrument) to the bank, was placing it as security for Dr. Alford's $155,000.00 hand note and future advances by the bank to Dr. Alford. The argument is that the language in the pledge instrument, that she placed it as security for the $155,000.00 hand note, was somehow unintended surplus languagebecause the $155,000.00 note was simply the hand note of coincident date. This cannot be so because the Civil Code denominates a pledge a contract (Article 3133) and this contract, reduced to writing, unambiguously providing the pledge to be security only for "said note", clearly manifests the intent that only the $155,000.00 hand note be secured. La.Civil Code art. 1945(3).
[3] The text of article 3158 provides in pertinent part:

"[I]t is further provided that whenever a pledge of any instrument or item of the kind listed in this article is made to secure a particular loan or debt, or to secure advances to be made up to a certain amount, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising up to the limit of the pledge, and the pledged instrument or item remains and has remained in the hands of the pledgee, the instrument or item may remain in pledge to the pledgee or, without withdrawal from the hands of the pledgee, be repledged to the pledgee to secure at any time any renewal or renewals of the original loan or any part thereof or any new or additional loans, even though the original loan has been reduced or paid, up to the total limit which it was agreed should be secured by the pledge, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, without any added notification or other formality, and the pledge shall be valid as well against third persons as against the pledger thereof, if made in good faith; and such renewals, additional loans and advances or other obligations or liabilities shall be secured by the collateral to the same extent as if they came into existence when the instrument or item was originally pledged and the pledge was made to secure them." (Emphasis provided)
[4] Mere retention of the thing pledged, i. e. the collateral mortgage note, does not determine the continued existence of the pledge. See Durham v. First Guaranty Bank, supra; cf. Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956).