BOUTALL, Judge.
This is a suit for payment of a collateral mortgage promissory note alleged to have been pledged as security for the handnote of a third party. The main issue is whether there was actually a pledge.
Vera Mara, the nominal acceptor of a collateral mortgage and promissory note made by Mrs. Doris McCoy, wife of/and Glynn E. Blackwell, filed suit against the Blackwells alleging that the note and mortgage had been pledged to secure the payment of a promissory note made by C. W. Engineers, Inc. per Billy Ray Wilson, Vice-President, containing on the back thereof a pledge executed by the maker and Billy Ray Wilson individually, pledging a collateral mortgage promissory note made by Billy Ray Wilson and the collateral mortgage note executed by Blackwell, the subject of this suit.
The Blackwells admitted the execution of the collateral mortgage and the promissory note, but contend that these were confected to serve as security for a prior promissory note executed by C. W. Engineers, that the prior indebtedness had been paid in full, that they did not pledge or authorize anyone to pledge the collateral mortgage and note as surety for any subsequent transactions. They point out that Mara is not a holder of the note (she does not so allege in her petition) and that the real holder is Lawrence Aiavolasiti who loaned the money and that the entire transaction wTas handled through Mr. Aiavolasiti’s attorney, hence this is not a suit by a holder in due course, but rather by someone who is subject to all defenses.
The trial judge rendered judgment in favor of the defendants finding that “plaintiff was not a holder in due course, that there was no consideration for the note and collateral mortgage and that the indebtedness for which the collateral note and mortgage was originally pledged was discharged and paid in full,”. We affirm the judgment.
The details of the events leading up to the filing of suit, as disclosed by the evidence, are as follows: C. W. Engineers, Inc. had financial problems in 1969, and negotiated a loan with Lawrence Aiavolasiti, the transaction to be handled by his attorney. Each of the four principals in C. W. Engineers was required to execute, along with their wives, a collateral mortgage on his home in the amount of $25,000, naming Vera Mara, the attorney’s secretary, as the nominal recipient of the mortgage. The four principals then executed a written instrument of pledge, pledging the collateral notes and collateral mortgages as security for the loan. This loan was paid off, and two of the principals obtained cancellation of their collateral mortgages. The other two, Blackwell and Billy Ray Wilson, did not seek cancellation of the collateral mortgages.
There is a dispute in the evidence as to whether the attorney returned Blackwell’s note to the Blackwells, kept the note in his office or returned it to Wilson. The attorney testified that it was returned, but could not definitely say to whom it was returned. The Blackwells categorically deny receiving the note or having any conversation about the return of it, being under the belief that the payment of the original indebtedness would have the effect of cancelling the collateral mortgage. Wilson, the main mover in C. W. Engineers who handled all of the business transactions, was not available to testify, although subpoenaed by the Blackwells, being out of the United States.
About 2 years after that loan, Aiavolasiti made C. W. Engineers another loan on May 7, 1971 in the amount of $28,000, after negotiations with Wilson. The note was executed on its face C. W. Engineers, Inc. by Billy Ray Wilson, V. P., and on the *248 reverse side thereof contained an inscription that the note shall be secured by pledge of (1) the collateral mortgage promissory note of Billy Ray Wilson and (2) the collateral mortgage promissory note executed by Blackwell. Thereunder appear the signatures of Billy Ray Wilson and C. W. Engineers, Inc. by Billy Ray Wilson, Y. P. For emphasis, we state that the note contains no signature, endorsement or pledge by the Blackwells. They deny any knowledge of the transaction and any consent to pledge.
Under the state of the evidence, it cannot be determined precisely how delivery was achieved of the pledged note. We are convinced that it was not delivered by the Blackwells. We believe the evidence preponderates that it was originally handed to Wilson by Aiavolasiti’s attorney, and that Wilson delivered it in pledge without the knowledge or consent of Blackwell. Blackwell testified that he quit the company at the end of that month of May or the 1st of June because his pay check bounced, and he had no knowledge of the continued existence of the collateral mortgage inscription until he later attempted to sell his house.
These facts all support the conclusion of the trial judge that plaintiff was not a holder in due course. Indeed, the deposition of Mara introduced into evidence shows that she never was a holder of the note, that to her recollection it was kept in the office of the attorney. There is no showing that Wilson could have been a holder for value.
The defenses of the Blackwells are applicable in this case. Aiavolasiti through his own negotiations and the employment of the attorney to handle both of these transactions, is chargeable with knowledge of a defective pledge. See Louisiana Civil Code Articles 3142, 3145 and 3146. We consider this matter to be controlled by the principles announced in the recent case of First Guaranty Bank v. C. D. Alford, et al., 366 So.2d 1299 (La.1978). Regardless of whether the Blackwells’ note had been returned to Wilson or whether it had been kept in the office of the attorney of the lender, the Blackwells had no liability on the note of C. W. Engineers and gave no consent to a pledge of their collateral mortgage note as security.
The judgment appealed is affirmed at appellant’s cost.

AFFIRMED.