539 So.2d 1306 (1989)
CENTRAL LOUISIANA BANK & TRUST COMPANY, Plaintiff-Appellant,
v.
Dyrel DAUZAT d/b/a Dauzat Farms, Defendant-Appellee.
No. 87-1269.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1989.
*1307 Rodney M. Rabalais, Marksville, for plaintiff/appellant.
Michael F. Kelly, Marksville, for defendant/appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
YELVERTON, Judge.
The issue before us on this appeal is whether the crop pledgee, whose crop was sold out from under him to a third person, proved damages. We agree with the trial court that the crop pledgee could not prove damages in this case, and we affirm the judgment dismissing the plaintiff's suit.
A crop pledge, when properly recorded, is effective against third persons, so that the immediate purchaser of a crop subject to it buys with constructive notice of the pledge, and is personally liable to the crop pledgee, at least up to the value of the crop purchased by him. City Bank and Trust Company v. Marksville Elevator Co., 221 So.2d 853 (La.App. 3rd Cir.1969); Top Crop Seed & Supply Co. v. American Grain Association, 304 So.2d 805 (La.App. 3rd Cir.1974), writ denied 309 So.2d 339 (La.1975). Such liability, it has been jurisprudentially determined, is founded in tort. Alexandria Production Credit Association *1308 v. Horn, 199 So. 430 (La.App. 2d Cir. 1940), writ denied 199 So. 430 (La.1941); Top Crop Seed Supply Co. v. American Grain Association, supra. The primary objective for awarding damages in Louisiana is to place the injured party in as near a fashion as possible to the state in existence at the time immediately preceding the injury. Harper Oil Field Services v. Dugas, 451 So.2d 96 (La.App. 3rd Cir.1984).
This case is a suit by Central Louisiana Bank and Trust Company (CENLA) against Dyrel Dauzat, d/b/a Dauzat Farms (Dauzat), for damages. The petition was entitled "Petition to Enforce Crop Pledge Against Third Party Purchaser". The suit was based upon mostly undisputed facts.
Cecil Shivor farmed corn in Avoyelles Parish in 1985 both on his own land and also on land rented from Blaine. Shivor had pledged the corn crop on his land to CENLA. The pledge did not include the crop on the Blaine property. In September 1985 Shivor sold some corn to Dauzat. The trial court found as a fact, and it is not disputed on appeal, that the corn sold that was subject to the pledge was worth $1,407.05.
The pledge was recorded. Dauzat was in good faith, but had constructive notice of the recordation. CENLA was not protected when the payment was made to Shivor for the corn. Shivor did not account to CENLA for the money received for the pledged corn.
After the Dauzat purchase of the pledged corn, Shivor defaulted on three promissory notes due CENLA, two of which were secured by a chattel mortgage and the crop pledge, and one of which was secured by a separate real estate mortgage. In one suit CENLA foreclosed by executory process under the chattel mortgage and also the real estate mortgage, and obtained one order of seizure and sale. The property secured by the chattel mortgage and the crop pledge, consisting of a combine, two tractors, and a six-row planter, was separately appraised at a total of $17,000. The real estate was separately appraised at $75,000.
At the Sheriff's Sale CENLA directed that all of the property, both movable and immovable, seized under both mortgages, be sold in globo. The bid price was $85,000. We will continue a recitation of the facts by quoting the trial judge:
"The price received was sufficient to extinguish the debt as to principal and interest, but not as to attorneys fees of 25% claimed in the amount of $5293.28 and court costs of $5284.09. The major portion of the Court Costs are attributable, however, to the costs based on the sale price of the land and equipment, and none of the attorneys fees have been paid in fact. However, since we have previously concluded that the maximum amount which can be claimed herein is $1407.05, without extended computation, we can conclude that at least this amount remained as due to Cenla by Shivor."
The trial court found that CENLA had failed to prove that it suffered a loss, and that its failure to prove damages was the result of its action in directing that the judicial sale be in globo. The court based its decision on two separate rationales. First, the judge applied the civil code articles dealing with imputation of payment, particularly Article 1868 which provides in detail the way that payment is to be imputed when the parties themselves have made no imputation. From this article the judge reasoned that the imputation of the proceeds of a judicial sale must be made in the manner most favorable to the obligor, in this case Dauzat, and the two notes secured by the farm equipment and the crop pledge having the highest interest rates, and being considered the most burdensome, should thereby be considered to have been discharged first. The imputation of payment rationale, according to the trial court calculations, required the conclusion that the obligations secured by the crop pledge were entirely discharged. We do not believe that the imputation of payments article is applicable in this case because Dauzat's obligation to CENLA was not based upon Shivor's promissory notes.
The other rationale employed by the trial judge was that the in globo sale rendered *1309 it impossible to determine how much of the sale price was for the farm equipment, and therefore it was impossible to determine whether or not that portion of the price was sufficient to extinguish the debts secured by the farm equipment and the crop pledge. This approach to a resolution of the issue was simply that the in globo sale rendered it impossible for the plaintiff to prove damages.
The trial court rejected CENLA's argument that a proportion could be mathematically established between the appraised value of the property ($17,000 for the movables and $75,000 for the immovables), and the bid price, which would establish a deficiency as to the movables in excess of what CENLA here claims, which is $1,407.05, plus legal interest from date of judicial demand and costs.
On this appeal CENLA re-urges this argument. Dauzat, arguing for an affirmation, counters that the sale in globo was in violation of the terms of La.C.C.P. art. 2295.
We cannot accept Dauzat's reasoning but we agree with his result. The proceedings under attack were executory process proceedings. La.C.C.P. art. 2295, which regulates the seizure and sale of property under a writ of fieri facias, is not applicable to executory proceedings. First Financial Bank v. Hunter Forest Ltd., Partnership, 456 So.2d 1380 (La.1984). However, we agree with Dauzat that the in globo sale defeated CENLA's rights to a deficiency judgment against Shivor (and, for the same reason, defeated CENLA's rights to damages against Dauzat, a third party purchaser), for reasons which follow.
In this case, although CENLA combined them in one petition, its foreclosure was on separate mortgage notes and mortgages. We have been unable to find any authority for the in globo sale in such a case of all of the secured property under different mortgages. As pointed out in First Financial Bank v. Hunter Forest Ltd., Partnership, supra, when a person seeks to enforce a mortgage on property in an executory proceeding, he is entitled to effect the seizure and sale of the whole property subject to the mortgage, and C.C. P. art. 2295, which is not applicable to executory proceedings, does not give the judgment debtor any control over the items to be sold or the order of sale. This proposition, however, only applies to one mortgage at a time.
In our opinion this was an unauthorized in globo judicial sale. It appears to us that this case should be resolved on the same public policy principles that underscore the Louisiana Deficiency Judgment Act. C.C.P. arts. 2771-2772; R.S. 13:4106-4107. In terms of public policy, a claim against a good faith but technically liable third party for tort damages in such a case as this is somewhat like a claim against the debtor for a deficiency judgment when there has been a failure to comply with appraisal requirements. A creditor seeking to obtain a deficiency judgment must prove that there is a deficiency due on the debt after the distribution of the proceeds of the judicial sale, and that the property was sold under executory proceedings after appraisal in accordance with law. First Guaranty Bank v. Baton Rouge Petroleum, 529 So.2d 834 (La.1987). The deficiency judgment act declares a statement of public policy that when a creditor takes advantage of a waiver of appraisement by a debtor, and the proceeds of the judicial sale are insufficient to satisfy the debt, the debt is discharged and the creditor shall not have an unqualified right to proceed against the debtor or any of his other property for such deficiency. Id. In the present case the in globo judicial sale of the combined property seized under more than one executory proceeding creates insurmountable problems. There is no means available to properly apportion the bid price with respect to the debts. Application of the proceeds to the individual debts becomes simply an arbitrary function. Under such circumstances the creditor finds himself unable to prove that the *1310 debt secured by the crop pledge is not discharged.
Thus, unable to prove a loss by which to equate damages, CENLA cannot prove damages against Dauzat. We agree with the trial court. The judgment is affirmed at CENLA's costs.
AFFIRMED.