576 So.2d 1123 (1991)
FIRST BANK OF NATCHITOCHES & TRUST COMPANY, Plaintiff-Appellant,
v.
A.B. CHENAULT, et al., Defendants-Appellees.
No. 89-900.
Court of Appeal of Louisiana, Third Circuit.
March 13, 1991.
*1124 McCoy & Hawthorne, Kenneth D. McCoy, Jr., Natchitoches, for plaintiff/appellant.
Kyzar & Celles, George L. Celles IV, Gahagan & Gahagan, Fred S. Gahagan, Natchitoches, for defendants/appellees.
Before DOMENGEAUX, C.J., and GUIDRY and DOUCET, JJ.
GUIDRY, Judge.
Appellant, First Bank of Natchitoches & Trust Company (hereafter FBN), appeals the dismissal of its petition for a deficiency judgment against A.B. Chenault and his wife, Effie Basco Chenault. The facts which give rise to this litigation are outlined below.
On March 1, 1985, A.B. and Effie B. Chenault executed a collateral mortgage note of $12,000.00, a collateral mortgage and a collateral pledge agreement in favor of FBN in order to secure present and future debts. On August 31, 1987, A.B. Chenault executed a chattel mortgage note and mortgage for $9,221.90 in favor of FBN.
On May 16, 1988, A.B. Chenault borrowed $5,078.34 from FBN, evidenced by a hand note of even date, which loan was secured by the pledge agreement of March 1, 1985 and the collateral referred to therein. On September 14, 1988, A.B. Chenault executed a second collateral pledge agreement, pledging the August 31, 1987 chattel mortgage note and mortgage in order to secure present and future debts to FBN. Thereafter on the same day, Chenault borrowed $12,141.38 from FNB, which loan was evidenced by a hand note executed by Chenault. This hand note was secured by the pledge agreements of March 1, 1985 and August 31, 1987 and the collateral referred to therein.
Chenault defaulted on both promissory notes owing $3,026.94, the principal balance remaining on the promissory note of May 16, 1988, and $10,780.35, the principal balance remaining on the note of September 14, 1988. Both notes provided for a common rate of interest, were fully cross-collateralized and secured by collateral pledge agreements as indicated above. The notes provided for attorney's fees in the amount of 25% of the principal and interest due on the notes.
FBN filed a petition for foreclosure by executory process on January 12, 1989. An attorney was appointed to represent the absentee defendant, A.B. Chenault. FBN's petition sought the seizure and sale of the *1125 secured property, movable and immovable, to satisfy FBN's claims on the notes. An order to this effect was signed on January 17, 1989. The mortgaged properties were separately appraised and subsequently sold in globo at a sheriff's sale on March 22, 1989. FBN was the last and highest bidder, bidding $7,200.00, more than two-thirds the appraised value of the properties. After deducting $705.72 in costs, the defendants received a credit of $6,494.28 against the indebtedness.
On March 27, 1989, FBN filed a petition for a deficiency judgment against A.B. and Effie Chenault. Following a hearing in the matter, the trial court rejected FBN's demands concluding, in written reasons for judgment, that the in globo sale of properties encumbered by separate mortgages made allocation of the bid price to the amount owed under the separate mortgage notes impossible; in globo sales of property are not authorized in foreclosures under executory process; and, the conduct of the sale in such manner bars FBN's right to a deficiency judgment. We reverse.
In determining that in globo sales are unauthorized in executory proceedings, the trial judge stated:
"The Code of Civil Procedure, Article 2631, sets forth procedures concerning executory proceedings. Article 2724 allows procedures relating to the sale of property under writs of fieri facias to apply to the sale of property by executory process. Article 2295, which authorizes in globo sales, is not listed in Article 2724 and, therefore, Article 2295 (the in globo article) does not apply to executory process.
A Louisiana Supreme Court case, First Financial Bank v. Hunter Forest Limited Partnership, 456 So.2d 1380, clearly states that Article 2295 does not apply to executory proceedings."
We agree that C.C.P. art. 2295 has no application in executory proceedings and that our Supreme Court so held in First Financial Bank, supra, however, we do not consider that this holding lends support to a conclusion that in globo sales are prohibited in proceedings under executory process. Article 2295 provides for the order of sale of properties seized under a writ of seizure and sale, where the judgment creditor has no privilege other than that resulting from the seizure. This article, by its terms, reserves to the judgment creditor the right to direct the sale of property on which he has a mortgage. Conversely, in our view, First Financial Bank lends support to a holding that in globo sales are authorized in executory proceedings. In that case the creditor, foreclosing via executory process, seized numerous lots covered by a single mortgage, and the defendant, Hunter Forest, sought unsuccessfully to force the seizing creditor to sell the lots separately rather than in globo. In First Financial Bank, the court stated:
"Based on the clear wording and scheme of the Code, however, we conclude that article 2295 is not applicable to executory proceedings and that the partnership has no right to prevent a seizure and sale of the whole property subject to plaintiff's mortgage." (Emphasis ours)
Therefore, it is clear that the several properties subject to a single mortgage are subject to being sold in globo. As we see it, the real issue in this case is whether a mortgage creditor, who holds two separate mortgages executed by the same debtor-mortgagor, is prohibited from filing one executory proceeding, seizing the encumbered properties under a single writ of seizure and sale and thereafter offering the property for sale in globo.
The trial court concluded that this was unauthorized and barred the creditor's right to a deficiency judgment apparently relying, without citation, on certain language in this court's decision in Central Louisiana Bank & Trust Company v. Dauzat, 539 So.2d 1306 (La.App. 3rd Cir. 1989). As we note hereafter, the facts in Dauzat are so different from those present in the case sub judice as to render inapposite our precise holding in that case. In Dauzat, the plaintiff-bank held three separate notes from a borrower, Shivor. Two of the notes were secured by a chattel mortgage and a crop pledge. The third note was secured by a conventional mortgage *1126 encumbering real estate. The loan notes were not cross-collateralized. Following recordation of the crop pledge, Dauzat purchased part of Shivor's crop which was pledged to the Bank, thus incurring potential liability to the Bank for the value of the crops purchased. Shivor defaulted on the several notes, secured as aforestated, and the Bank proceeded via executiva in a single suit on all three notes. Ultimately, the mortgaged properties were sold in globo, following which the Bank instituted suit against Dauzat for the value of the pledged crop of which it had been deprived. In affirming the trial court's judgment dismissing the plaintiff-bank's claim, this court stated:
"... In the present case the in globo judicial sale of the combined property seized under more than one executory proceeding creates insurmountable problems. There is no means available to properly apportion the bid price with respect to the debts. Application of the proceeds to the individual debts becomes simply an arbitrary function. Under such circumstances the creditor finds himself unable to prove that the debt secured by the crop pledge is not discharged.
Thus, unable to prove a loss by which to equate damages, CENLA cannot prove damages against Dauzat...."
In sum, we held in Dauzat that because of the in globo sale, it was impossible for the Bank to establish that the indebtedness secured by the crop pledge had not been completely satisfied by the judicial sale. In the Dauzat opinion appears the following excerpt on which appellee relies:
"In this case, although CENLA combined them in one petition, its foreclosure was on separate mortgage notes and mortgages. We have been unable to find any authority for the in globo sale in such a case of all of the secured property under different mortgages ..."
Although the quoted language was not necessary to a disposition of the issue presented in Dauzat and may be considered dictum, we candidly admit that we have been unable to find any specific authority for an in globo sale of all of the secured property under different mortgages. However, by the same token, we have been unable to find any authority, statutory or otherwise, which would prohibit a mortgage creditor, who holds separate mortgages from the same debtor-mortgagor, from filing one executory proceeding and ultimately having the encumbered properties sold at judicial sale in globo. We can conceive of no valid reason why this action should be prohibited absent some showing of prejudice by the mortgagor-debtor. In the case sub judice, we are unable to discern any prejudice suffered by the defendants.
The hand notes executed by A.B. Chenault were secured by both collateral pledge agreements to the extent of any amounts remaining due thereon. The interest rates on the two notes are identical. The properties were validly appraised prior to the sale and the bid price was in excess of two-thirds of the appraised value of all properties. Defendants made no objection to the proposed manner of sale and at no time requested that the properties be sold separately. A.B. Chenault, the maker of the hand notes, is liable for the entire balance due, no matter how the net credit from the sale is applied. The agreement of March 1, 1985, executed by A.B. Chenault and Effie B. Chenault, pledging the collateral mortgage and collateral mortgage note to FBN, which secured both hand notes executed by A.B. Chenault, bound Mrs. Chenault, in solido, with A.B. Chenault for payment of those obligations up to the full amount of the collateral mortgage note, i.e., $12,000.00. Bank of Lafayette v. Bailey, 531 So.2d 294 (La.App. 3rd Cir.1988), writ granted, 533 So.2d 5 (La.1988); Concordia Bank & Trust Company v. Lowry, 533 So.2d 170 (La.App. 3rd Cir.1988), writ granted in part and denied in part, 539 So.2d 46 (La.1989). Thus, it makes little difference to Mrs. Chenault how the net credit from the sale is applied as she is bound in solido with A.B. Chenault to the extent of the difference between the total net credit and the collateral mortgage note of $12,000.00, plus interest and attorney's *1127 fees, but in no event to exceed the deficiency.
Defendants oppose plaintiff's demand for a deficiency judgment solely on the ground that the sale of the properties in globo was unlawful and is a defect in the executory proceedings which bars plaintiff's right to a deficiency judgment. Even if we were to concede that the in globo sale, under the circumstances of this case, is not authorized by our law, we would conclude that, standing alone, this defect does not bar a deficiency judgment where, as in the instant case, the creditor proves there is a deficiency due and that the property was sold, without objection, under executory proceeding after appraisal. First Guaranty Bank, Hammond, Louisiana v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834 (La.1987).
For these reasons, we conclude that the plaintiff, First Bank of Natchitoches & Trust Company is entitled to a deficiency judgment as prayed for and the trial court erred in concluding otherwise.
At trial the parties stipulated that the only issue concerned whether, as a matter of law, plaintiff was entitled to a deficiency judgment. In this connection, the parties stipulated that "the balances, the notes and all of that are recognized as true and correct that these notes were signed, these amounts were due".
Accordingly, for the aforestated reasons, we reverse the judgment of the trial court and, pursuant to the stipulation of the parties, we recast the judgment as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, FIRST BANK OF NATCHITOCHES AND TRUST COMPANY, and against defendant, A.B. CHENAULT and EFFIE BASCO CHENAULT, in solido, in the full sum of (1) $3,026.94, with interest at the rate of 15% per annum from December 6, 1988 until paid; (2) $10,780.35, with interest at the rate of 15% per annum from December 6, 1988 until paid; (3) an additional 25% of the aforesaid sums of principal and interest as attorney's fees; ALL SUBJECT to a credit in the amount of $6,494.28 on March 22, 1989; and, provided, however, that the liability under this judgment of Effie Basco Chenault shall not exceed the total sum of $12,000.00, with interest at the rate of 12% per annum from December 6, 1988 until paid, and an additional 25% interest as attorney's fees, subject to the aforesaid credit in the amount of $6,494.28 on March 22, 1989.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the fee of George L. Celles, IV, curator for A.B. Chenault, is fixed at the sum of $300.00 and is taxed as costs.
All costs of this matter, both at the trial level and on appeal, are taxed to the defendants, A.B. Chenault and Effie B. Chenault.
REVERSED AND RENDERED.
DOMENGEAUX, C.J., concurs. I was on the panel in the Dauzat case. Dauzat is inapposite to the case sub judice.