616 So.2d 648 (1993)
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF NEW IBERIA
v.
Jefferson J. MOSS and Rebecca Fournet Moss.
No. 92-C-3143.
Supreme Court of Louisiana.
April 12, 1993.
*649 Jefferson Joseph Moss, Jr., Richard Mary, for applicant.
Billy J. Domingue, Craig A. Ryan, Liskow & Lewis, for respondent.
HALL, Justice.[*]
This case presents the question of whether an in globo judicial sale of two separately mortgaged immovable properties seized in a single executory proceeding is unauthorized and constitutes a fundamental defect in the executory proceeding, precluding the seizing creditor from obtaining a deficiency judgment on the two underlying debts. The court of appeal, reversing the trial court, answered this question in the negative. We answer this question in the affirmative and thus reverse.

I.
On October 12, 1982, Jefferson J. Moss, Jr., and Rebecca F. Moss obtained a loan from First Federal Savings & Loan Association of New Iberia to acquire a four-plex apartment complex located on Lot 175 of He Des Cannes Subdivision in Lafayette Parish ("Lot 175"). As part of the financing of that loan, the Mosses executed a promissory note in the amount of $106,000, secured by a mortgage on Lot 175 ("Note 1"). On that same date, the Mosses and Richard Becker obtained a second loan from First Federal to acquire a four-plex apartment complex located on Lot 173 of that same subdivision ("Lot 173"). As part of the financing of the second loan, the Mosses and Becker executed a promissory note in the amount of $106,000, secured by a mortgage on Lot 173 ("Note 2"). In February 1987, the Mosses, Becker and First Federal entered into a Cash Sale with Assumption Agreement. Pursuant to that agreement, Becker conveyed his one-half interest in Lot 173 to the Mosses; the Mosses assumed Becker's liability under Note 2; and First Federal released Becker from liability. In June 1987, the Mosses defaulted on both loans.
In July 1988, First Federal filed a single petition for executory process, foreclosing on both mortgages and requesting that the properties be sold at judicial sale with appraisal. First Federal's petition did not request that the properties be sold either separately or together. Nor did any of the statutorily required notices served on the Mosses indicate that the properties would be sold together; rather, the notices indicated that the properties would be sold in accordance with law.
*650 In October 1988, the Mosses were personally served with a notice of seizure and sale, and a notice to appoint appraiser by December 19, 1988. As the Mosses failed to appoint an appraiser by the designated date, the sheriff, pursuant to LSA-R.S. 13:4364, appointed Marilyn Crouchet as their appraiser. First Federal appointed Wayne Cestia, one of its employees, as its appraiser. Both appraisers signed the appraiser's report form, each assigning a value to the properties of "$35,000.00 Dollars per 4-PlexTotal $70,000." On December 28, 1988, the sheriff sold the properties at judicial sale in globo. First Federal was the successful (and only) bidder at the sale, purchasing the properties for $49,000.00 (70% of the total appraised value). First Federal did not request that the properties be separately sold. Nor did the Mosses seek to enjoin the sale or to voice, in any other manner, an objection to the sale.
In January 1989, First Federal commenced the instant deficiency judgment action, seeking to obtain a judgment for the remaining balance owed on the two notes ($102,069.94 on Note 1 and $102,159.94 on Note 2), plus interest and attorney's fees, less a credit for the net amount received from the judicial sale, $47,822.12 (the $49,000.00 bid price less costs of $1,177.88). The Mosses answered contending that First Federal was not entitled to a deficiency judgment as it failed to sell the properties in accordance with law. Meanwhile, in October 1990, the Resolution Trust Corporation ("RTC") was substituted as the proper party plaintiff, having been appointed as First Federal's receiver. (For ease of reference, we refer hereinafter to the plaintiff-creditor as "Bank".)
In January 1991, the Mosses filed a motion for summary judgment, contending that the in globo sale of Lot 175 and Lot 173 was unauthorized, created the insurmountable problem of how to allocate the sale proceeds between Note 1 and Note 2, and thus precluded Bank from obtaining a deficiency judgment. In support of these contentions, the Mosses cited Central Louisiana Bank & Trust Co. v. Dauzat, 539 So.2d 1306 (La.App. 3d Cir.1989), which held, albeit in a different factual context, that such an in globo sale is unauthorized. In conjunction with their motion for summary judgment, the Mosses filed an affidavit of Marilyn Crouchet, the sheriff-appointed appraiser; it avers that affiant would have appraised the properties differently had she known that there would be only one sale of both properties.
Agreeing with the Mosses' contentions and finding Dauzat, supra, dispositive, the trial court granted the Mosses' motion for summary judgment and dismissed Bank's deficiency action. In so doing, the trial court opined:
A creditor seeking to obtain a deficiency judgment must prove that there is a deficiency due on the debt after distribution of the proceeds of the judicial sale. In this case, there is no means available to properly apportion the bid price with respect to the debts. Irrespective of the identical appraisals, had the property been offered separately, the deficiency may not have been as great. However, the opportunity to purchase a single lot was negated by the unauthorized "in globo" sale which results in a denial of a deficiency judgment. Therefore, the debt is extinguished.
On appeal, the Third Circuit framed the issue as whether the in globo judicial sale pursuant to executory process of two separately mortgaged immovable properties that secured two separate notes was unauthorized and was a defect which barred Bank's right to a deficiency judgment. In resolving this issue, the court found Dauzat, supra, distinguishable and First Bank of Natchitoches & Trust Co. v. Chenault, 576 So.2d 1123 (La.App. 3d Cir.1991), dispositive. The court reasoned, following Chenault, supra, that an in globo sale is lawful absent a showing of prejudice to the debtor. Finding the Mosses failed to show that they were prejudiced by the in globo sale, the court reversed and remanded for further proceedings. First Federal Savings & Loan Association of New Iberia v. Moss, 607 So.2d 1085 (La.App. 3d Cir.1992).
We granted the Mosses' writ application, 610 So.2d 806 (La.1993), primarily to determine *651 whether an in globo sale of separately mortgaged properties in an executory proceeding is unauthorized. For the reasons detailed below, we decide that such an in globo sale is unauthorized and that, under the circumstances of this case, the unauthorized sale constitutes a fundamental defect in the executory proceeding, precluding the seizing creditor from obtaining a deficiency judgment. We thus reverse the court of appeal and reinstate the trial court's decision.

II.
A creditor seeking to obtain a deficiency judgment has the burden of establishing compliance with two criteria: (1) insufficiency of the sale proceeds to satisfy the underlying debt; and (2) sale of the seized property after appraisal in accordance with the codal and statutory requirements for executory proceedings. First Acadiana Bank v. Bieber, 582 So.2d 1293, 1296 (La.1991); First Guaranty Bank, Hammond, Louisiana v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834, 842 (La.1988) (on rehearing). Proof of these criteria is necessary to establish that the creditor has not been barred from obtaining a deficiency judgment by operation of LSA-C.C.P. Art. 2771 and LSA-R.S. 13:4106(A). Bieber, 582 So.2d at 1296.
Bank argues, supported by the court of appeal's decision, that both of these criteria can be established. First, Bank contends that it can prove a deficiency is due by crediting the sale proceeds to the total debt due, i.e., by lumping the debts together. Second, Bank contends that it can prove that the seized properties were sold after appraisal in accordance with the codal and statutory requirements for executory proceedings; namely: the statutorily required notices were given, two appraisers were appointed, the appraisals were reduced to writing with the required signatures, and the sale brought 70% of the total appraised value. As to the alleged unauthorized nature of the in globo sale, Bank contends that Chenault, supra, correctly holds that, absent prejudice to the debtor, an in globo sale of separately mortgaged properties is authorized. Alternatively, Bank contends that even assuming an in globo sale is unauthorized, under First Guaranty that defect, standing alone, would not bar a deficiency judgment when, as here, it can be proved that a deficiency is due and that the properties were sold, without objection, under executory proceeding after appraisal.
The Mosses counter, supported by the trial court's decision, that because of the in globo sale, neither of the two criteria can be established. First, they contend, citing Dauzat, supra, that the in globo sale resulted in an insurmountable problem of how to allocate the sale proceeds between Note 1 and Note 2, and concomitantly, rendered Bank unable to establish the deficiency due on either note. Second, they contend that the codal and statutory requirements for executory proceedings were violated in three respects; namely: (1) the lack of notice of the in globo nature of the sale rendered the notices defective; (2) the separate appraisal of the properties sold in globo rendered the appraisal defective; and (3) the unauthorized in globo sale of the two separately mortgaged properties rendered the sale defective.

III.
The primary question in this case is whether an in globo sale of separately mortgaged properties in an executory proceeding is unauthorized. The instant case is the third of a trio of recent Third Circuit cases addressing this question. The other two cases are Dauzat, relied upon by the trial court, and Chenault, relied upon by the court of appeal. In both Dauzat and Chenault, the Third Circuit candidly conceded the lack of any statutory or jurisprudential authority for an in globo sale of separately mortgaged properties in an executory proceeding. Also in both cases, the Third Circuit commenced its analysis with an explanation of First Financial Bank, FSB v. Hunter Forest Limited Partnership, 456 So.2d 1380 (La.1984).
In Hunter Forest, supra, we held that the codal provision granting a judgment debtor a conditional right to compel an in *652 globo sale, LSA-C.C.P. Art. 2295, does not apply to executory proceedings.[1] In so finding, we differentiated "unfocused seizures and sales" pursuant to ordinary proceedings from the narrowly focused seizures and sales pursuant to executory proceedings, stating:
Unlike a writ of seizure and sale under executory process, [a writ of fieri facias under ordinary process] may not be issued before judgment and its operation is not restricted to property affected by a mortgage or privilege. For this reason, article[] 2295 ... permit[s] a judgment debtor to designate the order in which the items or portions of his property will be sold ... with the exception of property on which the judgment creditor has a mortgage or privilege other than that resulting from the seizure. Apparently, the legislature did not see fit to make article[ ] 2295 ... applicable to executory proceedings because the risk of an ... unreasonable order of sale therein is limited in that an executory proceeding usually is confined to the enforcement of a specific mortgage or privilege. McMahon, The Historical Development of Executory Procedure in Louisiana, 32 Tul.L.Rev. 555, 569 (1958).
456 So.2d at 1382 (emphasis supplied). We thus held in Hunter Forest that a creditor holding a single mortgage secured by 116 condominium units had the right to compel, over the debtor's objection, an in globo sale of all the units.
Hunter Forest, as the Chenault court recognizes, does not stand for the proposition that an in globo sale is unauthorized in an executory proceeding; instead, it lends support to the converse proposition that an in globo sale is authorized in an executory proceeding when a single mortgage encompasses multiple properties. 576 So.2d at 1125. Indeed, LSA-C.C.P. Art. 2295 expressly reserves to the mortgagee-creditor the right to direct the sale of property on which he has a single mortgage, which right includes the right to compel a separate or an in globo sale. Bank of New Orleans and Trust Co. v. Lambert, 409 So.2d 294 (La.App. 1st Cir.1981), writ denied, 413 So.2d 494 (La.1982); LSA-C.C. Art. 3280, Official Revision Comment (b). That procedural right stems from, and is consistent with, the mortgagee-creditor's substantive rights under the mortgage. LSA-C.C. Art. 3280 provides that a mortgage by nature is indivisible and prevails over all the immovable property subject to it. It necessarily follows that "[t]he mortgagee can execute his mortgage against all or any part of the encumbered property, at his discretion." Lambert, 409 So.2d at 297 (collecting cases). Hence, the procedural and substantive law in this regard are consistent as both give a mortgagee-creditor holding a single mortgage on several pieces of property the right, within certain confines,[2] to direct the mode of sale.
*653 Hunter Forest, as the Dauzat court puts it, "only applies to one mortgage at a time." 539 So.2d at 1309. Hunter Forest thus does not answer the question presented here of whether in an executory proceeding, separate properties secured by separate mortgages may be sold in globo. In answering that question, Dauzat and Chenault diverge.
Relying on the principles underlying the Deficiency Judgment Act, Dauzat holds that such an in globo sale is unauthorized and precludes a deficiency judgment because it renders allocation of the sale proceeds impossible. Specifically, the Dauzat court states:
In the present case the in globo judicial sale of the combined property [foreclosed upon in a single petition but] seized under more than one executory proceeding creates insurmountable problems. There is no means available to properly apportion the bid price with respect to the debts. Application of the proceeds to the individual debts becomes simply an arbitrary function. Under such circumstances, the creditor finds himself unable to prove that the debt secured ... is not discharged.
539 So.2d at 1309-10.
Distinguishing Dauzat factually, Chenault reaches the opposite result, reasoning:
[W]e have been unable to find any authority, statutory or otherwise, which would prohibit a mortgage creditor, who holds separate mortgages from the same debtor-mortgagor, from filing one executory proceeding and ultimately having the encumbered properties sold at judicial sale in globo. We can conceive of no valid reason why this action should be prohibited absent some showing of prejudice by the mortgagor-debtor.
576 So.2d at 1126. We disagree.
The Chenault court's reliance on the lack of any statutory prohibition of an in globo sale of separately mortgaged properties overlooks the nature of executory process. Executory process is "a harsh remedy, requiring for its use a strict compliance by the creditor with the letter of the law." First Guaranty, 529 So.2d at 840. Hence, the issue is not whether such an in globo sale is prohibited, but rather whether it is authorized.
In resolving this issue, we begin by analyzing the codal scheme regarding executory proceedings. LSA-C.C.P. Art. 2631 provides that executory proceedings are authorized only "to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment, and in other cases allowed by law." LSA-C.C.P. Art. 2631 (emphasis supplied). The reference in this provision to "a" mortgage is significant. Indeed, as we stressed in Hunter Forest, supra, executory proceedings are generally confined to enforcing a "specific mortgage." 456 So.2d at 1382. In sum, the codal scheme contemplates the use of executory proceedings to enforce a single mortgage by seizure and sale of the property covered by the mortgage being enforced.
In resolving this issue, we also are guided by the general rule that, absent contrary statutory authority, when separate immovable properties are the subject of a judicial sale, they should, if practicable, be sold separately as items, rather than in globo. Mack Motor Truck Corp. v. Coco, 235 La. 1077, 106 So.2d 518, 521 (1958); Fertel v. Fertel, 226 La. 307, 76 So.2d 377 (1954). Indeed, absent a showing by the debtor that an in globo sale would be more advantageous, "there is no legal basis for a departure from this method of offering and selling separate items of property in judicial sales." Coco, 106 So.2d at 521. This general rule is based on the logical assumption that the highest bid price will be realized by utilizing this mode of sale. Simply put, more often than not, properties will attract a larger market and *654 a better bid price when sold separately than when sold in globo.
Given the general rule favoring separate sales, the general codal scheme contemplating foreclosure on a single mortgage and the lack of any statutory or codal authority for an in globo sale of separately mortgaged properties in an executory proceeding, we hold that such an in globo sale is unauthorized.

IV.
While we hold that an in globo sale of separately mortgaged properties is unauthorized and thus disagree with the statement in Chenault that such an in globo sale is authorized absent a showing of prejudice, we agree with the holding in Chenault that under the circumstances before ittwo fully cross-collateralized hand notesthe debtors' failure to object to the mode of sale resulted in a waiver under First Guaranty Bank, Hammond, Louisiana v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834 (La.1988) (on rehearing). More particularly, the Chenault court, citing First Guaranty, supra, states: "[e]ven if we were to concede that the in globo sale, under the circumstances of this case, is not authorized by our law, we would conclude that, standing alone, this defect does not bar a deficiency judgment where, as in the instant case, the creditor proves there is a deficiency due and that the property was sold, without objection, under executory proceeding after appraisal." 576 So.2d at 1127 (emphasis in original). Nonetheless, contrary to Bank's contention, such is not the case here.
What renders the unauthorized in globo sale in Chenault a mere procedural technicality yet in the instant case a fundamental defect, precluding Bank from obtaining a deficiency judgment, is the vastly different nature of the underlying security agreements. The security agreements in this case were two ordinary mortgages, each securing a separate promissory note; the security agreements in Chenault were two collateral mortgages, each pledged to secure the same two hand notes via a cross-collateralization clause. In differentiating these two types of security agreements, a brief comparison of ordinary and collateral mortgages will be helpful.
While both ordinary and collateral mortgages are conventional mortgages (created by contract), they are vastly different security devices. An ordinary mortgage is a mortgage to secure a particular, specific, existing debt. Thrift Funds Canal, Inc. v. Foy, 261 La. 573, 260 So.2d 628, 630 (1972); LSA-C.C. Art. 3287, et seq. An ordinary mortgage thus secures only the single mortgage note, and may not secure other, unrelated or related, debts of the debtor-mortgagor in favor of the creditor-mortgagee on a cross-collateralization basis.
By way of comparison, a collateral mortgage is not a "pure" mortgage; instead, it combines the security devices of mortgage and pledge into one. Texas Bank of Beaumont v. Bozorg, 457 So.2d 667, 671 (La.1984); First Guaranty Bank v. Alford, 366 So.2d 1299, 1302 (La.1978). A collateral mortgage is defined as "a mortgage that is given to secure a written obligation, such as a collateral mortgage note, negotiable or nonnegotiable instrument, or other written evidence of debt, that is issued, pledged, or otherwise used as security for another obligation." LSA-R.S. 9:5550(1). A collateral mortgage package generally consists of four separate documents:[3] (1) a collateral mortgage on the debtor-mortgagor's property, which secures (2) a collateral mortgage note, which is pledged to the creditor-mortgagee pursuant to (3) a collateral pledge agreement to secure (4) one or more hand notes. See Nathan and Marshall, The Collateral Mortgage, 33 La.L.Rev. 497 (1973). Often included in the collateral pledge agreement is, as in the two pledge agreements in *655 Chenault, a cross-collateralization clause,[4] under which the debtor-mortgagor agrees that the pledged collateral mortgage note not only will secure the primary hand note for which the mortgage is being pledged to secure, but also will secure any and all present and future debts that the debtormortgagor may incur in favor of the creditor-mortgagee.
Significantly, the Chenault court relied upon the cross-collateralization clauses in finding no prejudice resulted from the in globo sale, noting that both hand notes were secured by both collateral pledge agreements to the extent of any amounts remaining due. Continuing, the court found that the debtor-mortgagor therefore was liable for the entire balance due, regardless of how the net credit from the sale was applied.[5] The Chenault court thus correctly concluded that the in globo sale did not result in any Dauzat allocation problem and did not affect the creditor's ability to establish the deficiency due. Hence, the cross-collateralization clauses gave the Chenault creditor the substantive right to lump the amounts due on the two hand notes together and to treat that amount as a single debt.
Following Chenault, the court of appeal in the instant case applied the no prejudice standard, finding:
The case before us now involves two debts which are secured by two separate mortgages and are each owed by the same two debtors equally. The two mortgaged properties were separately appraised for equal values. Defendants have shown no prejudice resulting to them from the in globo sale. Plaintiff can prove the damages owed by the debtors in the deficiency judgments.
Moss, 607 So.2d at 1086. The flaw in the court of appeal's finding is that it ignores the difference between Bank's procedural and substantive rights.
Procedurally, Bank, like the Chenault creditor, had the right to cumulate these two executory proceedings in a single petition under LSA-C.C.P. Arts. 461 and 462. See John Deere Co. v. Eames, 556 So.2d 959, 963-64 (La.App. 3d Cir.1990). This procedural right to cumulate the two executory proceedings, however, did not give rise to any substantive rights. See Eames, supra; LSA-C.C.P. Art. 5051 ("rules of procedure implement the substantive law").
Substantively, Bank, unlike the Chenault creditor, had no contractual or statutory right to lump the two separate debts together. The Mosses and Bank entered into two entirely separate transactions: two ordinary mortgages, with each mortgage securing only one specific debt. Obviously, they intended for each transaction to stand on its own. That the debtors were the same at the time of the foreclosures and that the notes were virtually identicalwere for the same principal amount, bore the same interest rate, and were issued on the same dateis of no significance. Indeed, Bank's rights vis-a-vis one note and the collateral securing the other note (i.e. Note 1 and Lot 173, and Note 2 and Lot 175) are those of an unsecured creditor. See LSA-C.C. Art. 3183 (defining rights of unsecured creditor as to share pro rata in the proceeds of the sale of the debtor's property). The net effect of the use of an executory proceeding in the instant case to seize and sell in globo the two separately mortgaged properties to satisfy the two separate debts was to obtain for Bank an unbargained for cross-collateralization *656 of Note 1 and Note 2. The unauthorized in globo sale in this case therefore is a substantive, not a procedural, defect.
The cross-collateralization of the hand notes in Chenault and the lack thereof in the present case is significant in another respect. As noted above, the Chenault creditor was able, via its cross-collateralization rights, to lump the debts together, and thus no Dauzat allocation problem was presented. In fact, the Chenault court calculated the deficiency due by crediting the total net sale proceeds against the total debt due. In stark contrast, as the holder of two separate ordinary mortgages, Bank, for the reasons outlined above, lacks the substantive right to lump the two mortgage notes together. It follows then that the in globo sale created the Dauzat allocation problem and, contrary to the court of appeal's conclusion, rendered Bank unable to establish the deficiency due on Note 1 or Note 2.
The court of appeal's conclusion that the Mosses failed to show any prejudice resulting from the in globo sale may well be correct. Given that at the time of the sale there was only one creditor and one debtor, the allocation problem in this case may well be of no significance, despite the Mosses' contention that their rights under certain agreements with third parties were affected by the inability to determine the deficiency due on each debt. In any event, when, as here, there is a substantive defect in the executory proceeding going to the heart of the sale and appraisal process established for the debtor's protection, we find that it is not necessary for the debtor to prove specific prejudice in order to preclude the creditor from obtaining a deficiency judgment.
Finally, we note that the substantive defect in the executory proceeding in the present case stems not only from the unauthorized in globo sale, but also from Bank's failure to give the Mosses advance notice of the manner in which the sale would be conducted. This is not a case in which the defendant-debtors were given notice of each and every step of the appraisal and sale process and sat idly by, saving their objections and raising them only after they were displeased with the results of the sale.[6] Rather, the Mosses had no notice that the sale would be in globo; the statutorily required notices served on them did not indicate that the separate properties would be sold together. Accordingly, it cannot be said that the Mosses stood idly by and failed to assert defenses available to them in the executory proceeding. The defects in the executory proceeding in this case thus, as the Mosses correctly contend, are fundamental defects, falling outside the penumbra of First Guaranty, supra.
To conclude, we find that both criteria necessary to be established for obtaining a deficiency judgment are lacking. First, as a result of the in globo sale, Bank is unable to establish the deficiency due on the two underlying separate debts. Second, under the facts of this case, the unauthorized in globo sale constitutes a fundamental defect in the statutory and codal requirements for executory proceedings. Accordingly, we hold that Bank is not entitled to obtain a deficiency judgment.

V.
For the reasons detailed herein, the judgment of the court of appeal is reversed, and the judgment of the trial court granting defendants' motion for summary judgment and dismissing this action is reinstated.
REVERSED AND RENDERED.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Kimball, J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] LSA-C.C.P. Art. 2295 provides that:

If several items of property have been seized, or if one item of property which is divisible into portions has been seized, the judgment debtor, at any time prior to the first advertisement, may designate the order in which the items or portions of property will be sold, except that the judgment creditor can direct the sale of property on which he has a mortgage, or a privilege other than that resulting from the seizure.
If the judgment debtor does not designate the order of sale, the order of sale shall be at the discretion of the sheriff.
When property is offered by items or portions and the total price bid is insufficient to satisfy the judgment, with interest and costs, or if the judgment debtor so requests, the property shall be offered in globo and thus sold if a higher bid is obtained.
LSA-C.C.P. Art. 2295 (emphasis supplied). See Official Comment (d) to LSA-C.C.P. Art. 2295 ("[t]he debtor's right to direct whether the property is to be sold separately or in globo is made to depend on the amount of the bids").
[2] The creditor's right to compel an in globo sale is not an unfettered one. LSA-R.S. 13:4365(C) provides that "[t]he property seized must be appraised with such minuteness that it can be sold together or separately." This minuteness requirement has been construed as giving the debtor the right to request a separate sale by proving the prejudicial effect of an in globo sale. Stated another way, the minuteness requirement enables the debtor to establish that a separate sale would be more advantageous in that it would secure a potentially higher bid price. Bank of New Roads v. Livonia South, Inc., 527 So.2d 1132, 1136 (La.App. 1st Cir.), writ denied, 532 So.2d 150 (La.1988); International Harvester Credit Corp. v. Majors, 467 So.2d 1251 (La.App. 2d Cir.1985). The purpose of this requirement is to protect debtors from unnecessary deficiencies by encouraging competitive bidding. Livonia, 527 So.2d at 1136 (citing Majors, supra); see generally Ottinger, Enforcement of Real Mortgages by Executory Process, 51 La.L.Rev. 87, 118-20 (1990).
[3] But see First Guaranty Bank v. Alford, 366 So.2d 1299, 1302 (La.1978) (collateral mortgage package consists of at least three documents); Nathan and Dunbar, The Collateral Mortgage: Logic and Experience, 49 La.L.Rev. 39 n. 3 (1988) (only two documents are actually required for collateral mortgage package).
[4] This clause is also referred to as a "gorilla" clause. For an example of such a clause see Citizens National Bank v. Coates, 509 So.2d 103, 104 n. 2 (La.App. 1st Cir.1987), appeal after remand, 563 So.2d 1265 (La.App. 1st Cir.), writ denied, 568 So.2d 1058 (La.1990). See also Texas Bank of Beaumont v. Bozorg, 457 So.2d 667, 675 n. 10 (La.1984) (emphasizing that the proper place for the cross-collateralization clause is the pledge agreement, not the collateral mortgage).
[5] A close analysis of the Chenault decision reveals that the court recognized that each collateral mortgage was distinct as it limited the liability of one of the mortgagors, Effie B. Chenault, who was a party to only one of the collateral mortgages, to the amount of that collateral mortgage note. 576 So.2d at 1126-27.
[6] Cf. First Federal Savings and Loan Association of Lake Charles v. Morrow, 469 So.2d 424, 427 (La.App. 3d Cir.), writ denied, 474 So.2d 1304 (La.1985); see also Rubin, Security Devices, 49 La.L.Rev. 495, 497 (1988) (noting that debtor's failure to act on his own and appoint an appraiser or to raise his defenses to the appraisal timely may give rise to "diligent debtor" argument adopted in First Guaranty, supra).