844 So.2d 877 (2003)
LIBERTY BANK AND TRUST COMPANY
v.
Joan Miller, Wife of/and Delmont O. DAPREMONT, Jr.
No. 2002-CA-1504.
Court of Appeal of Louisiana, Fourth Circuit.
February 11, 2003.
Rehearing Denied April 30, 2003.
*878 Gerard O. Salassi IV, Newman, Mathis, Brady, Wakefield & Spedale, Metairie, LA, and John S. Keller, New Orleans, LA, for Plaintiff/Appellant.
Patrick D. Breeden, New Orleans, LA, and Joseph W. Thomas, New Orleans, LA, for Defendants/Appellees.
(Court Composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY III, Judge MAX N. TOBIAS, JR.).
*879 MAX N. TOBIAS JR., Judge.
Liberty Bank and Trust Company ("Liberty") appeals the trial court's granting of a writ of preliminary injunction, enjoining an order for executory process to seize and sell the defendants' property. For the reasons below, we reverse the trial court, set aside the writ of preliminary injunction, and permit the seizure and sale of the properties in question to proceed by executory process.
A review of the history of this matter reveals that on 1 February 2000, Liberty filed a verified petition for executory process against the defendants, Delmont Dapremont, Jr. and his wife, Joan Miller Dapremont, seeking to foreclose on property mortgaged by them located at 7421 Chadbourne Drive, New Orleans, Louisiana. Included in the petition was the allegation that the defendants were in default on their obligation. Attached to that verified petition were:
(1) A promissory note ("hand note") signed by Delmont Dapremont, Jr., on behalf of American Auto Sales, Inc., dated 16 August 1999 for the principal amount of $350,100.00;
(2) A collateral mortgage, dated 18 June 1997, executed in authentic form, naming Delmont Dapremont Jr. d/b/a American Auto Sales as borrower, Delmont Dapremont, Jr. and Joan Miller Dapremont as mortgagors, and signed by Delmont Dapremont, Jr. and Joan Miller Dapremont; and
(3) A collateral mortgage note, payable to the order of bearer, dated 18 June 1997, paraphed "Ne Varietur" for identification with the collateral mortgage, and signed by Delmont Dapremont, Jr. and Joan Miller Dapremont.
On 17 March 2000, Liberty filed a supplemental and amending verified petition for executory process, which added Hilda Palao Dapremont and Elaine Dapremont Trotter as defendants. That petition also sought to foreclose on property mortgaged by Delmont Dapremont, Jr., Hilda Palao Dapremont, and Elaine Dapremont Trotter located at 3962-64 Pauger Street, New Orleans, Louisiana. Attached to the supplemental and amending verified petition were:
(1) A collateral mortgage, dated 18 June 1997, executed in authentic form, naming Delmont Dapremont Jr. d/b/a American Auto Sales as borrower, Delmont Dapremont, Jr., Hilda Palao Dapremont, and Elaine Dapremont Trotter as mortgagors, and signed by Delmont Dapremont, Jr., Hilda Palao Dapremont, and Elaine Dapremont Trotter; and
(2) A collateral mortgage note, dated 18 June 1997, made payable to the order of bearer, paraphed "Ne Varietur" for identification with the collateral mortgage, and signed by Delmont Dapremont, Jr., Hilda Dapremont, and Elaine Dapremont Trotter.
Thereafter, the trial court signed an order of executory process pursuant to which the defendants' properties were seized.
On 22 May 2000, the defendants filed a petition seeking to enjoin the sale, alleging that Liberty's verified petition and its attachments did not satisfy the law of executory process. A hearing was held on 30 June 2000, at which the trial court granted the defendants' request for a writ of preliminary injunction.
On appeal, a panel of this court affirmed the trial court's ruling enjoining the sale, finding that Liberty had not met the strict requirements necessary to avail itself of executory process. In addition, the court remanded the case to the trial court to fix the amount of the bond.
On remand, Liberty filed a second supplemental and amending verified petition for executory process on 7 March 2002, *880 and attached the following exhibits in an effort to correct the deficiencies found in its earlier petitions:
(1) A commercial guaranty dated 11 June 1998, executed in authentic form naming American Auto Sales, Inc. as the borrower and Delmont Dapremont, Jr. as the guarantor and signed by Delmont Dapremont, Jr.;
(2) A pledge of collateral mortgage note dated 16 August 1999 executed in authentic form naming American Auto Sales, Inc. as the borrower and Delmont Dapremont, Jr. and Joan Miller Dapremont as the grantor and signed by Delmont Dapremont, Jr. and Joan Miller Dapremont. The document references the collateral mortgage dated 18 June 1997 on the property located at 7421 Chadbourne Drive, New Orleans, Louisiana and a promissory note dated 16 August 1999 in the amount of $350,100.00;
(3) A corporate resolution dated 16 August 1999 executed in authentic form[1] naming American Auto Sales, Inc. as the borrower and authorizing the president of the corporation, Delmont Dapremont, Jr., various powers which are enumerated. The resolution is signed by Delmont Dapremont, Jr.; and
(4) A pledge of collateral mortgage note, dated 18 June 1997 executed in authentic form naming Delmont Dapremont, Jr., Hilda Palao Dapremont, and Elaine Dapremont Trotter as the grantor and signed by Delmont Dapremont, Jr., Hilda Palao Dapremont, and Elaine Dapremont Trotter. This pledge references the collateral mortgage dated 18 June 1997 and a promissory note dated 18 June 1997 in the amount of $75,021.00, which $75,021.00 note is not in the record.
On 7 March 2002, the trial court signed a new order of executory process and the defendants' property was seized. The defendants then filed a supplemental and amending petition for a writ of preliminary injunction and a motion for contempt, alleging that Liberty was in contempt of the trial court's previous preliminary injunction.
After reviewing the record, the trial court again found that Liberty failed to comply with the strict requirements of executory process. It again issued a writ of preliminary injunction with a bond of $4,500.00. In particular, the trial court stated:
[L]iberty has failed in its petition for executory process to attach a pledge agreement by which the owners of the property at 3962-64 Pauger Street, New Orleans, La., pledged the collateral mortgage and collateral mortgage note to secure the debt of the corporation. Rather, Liberty has attached to its supplemental and amending petition for executory process a pledge of collateral mortgage and collateral mortgage note to secure a promissory note in the amount of $75,021.00, which has not been made a part of the record. Nowhere, in the documentation submitted does Liberty submit evidence that the collateral mortgage, and collateral mortgage note executed by Delmont Dapremont, Jr., Hilda Palao Dapremont, and Elaine Dapremont Trotter were pledged to secure either the promissory note in the amount of $350,100.00 or the promissory note in the amount of $75,021.00 (which is not in the record).

* * *
As such, the Court finds the evidence pertinent for plaintiff's [sic] to proceed *881 via executory process is missing from the record, i.e., the acknowledgment of pledge of the collateral mortgage note and collateral mortgage which secures the debt executed by Delmont Dapremont, Jr., Hilda Palao Dapremont, and Elaine Dapremont Trotter. Accordingly, the Court grants defendant's [sic] petition for preliminary injunction, enjoining the seizure and sale of the defendant's [sic] property. [Emphasis in original.]
However, finding Liberty in good faith by filing the supplemental and amending verified petition for executory process, the trial court denied the defendants' motion for contempt for Liberty's alleged willful disobedience of the first preliminary injunction.
It is from this judgment that Liberty takes an appeal pursuant to La. C.C.P. art. 3612. Liberty contends that it has fulfilled all requirements to proceed by executory process and that the trial court erred by issuing the writ of preliminary injunction.
The requirements with respect to executory proceedings are found in La. C.C.P. art. 2631 et seq. In particular, articles 2634-37 discuss the authentic evidence that must, and the evidence that need not, be submitted with a petition for executory process, as follows:
Art. 2634. Petition
A person seeking to enforce a mortgage or privilege on property in an executory proceeding shall file a petition therefor, praying for the seizure and sale of the property affected by the mortgage or privilege. This petition shall comply with Article 891, and the plaintiff shall submit therewith the exhibits mentioned in Article 2635.
Art. 2635. Authentic evidence submitted with petition
A. In order for a plaintiff to prove his right to use executory process to enforce the mortgage, security agreement, or privilege, it is necessary only for the plaintiff to submit with his petition authentic evidence of:
(1) The note, bond, or other instrument evidencing the obligation secured by the mortgage, security agreement, or privilege.
(2) The authentic act of mortgage or privilege on immovable property importing a confession of judgment.
(3) The act of mortgage or privilege on movable property importing a confession of judgment whether by authentic act or by private signature duly acknowledged.
B. This requirement of authentic evidence is necessary only in those cases, and to the extent, provided by law. A variance between the recitals of the note and of the mortgage or security agreement regarding the obligation to pay attorney's fees shall not preclude the use of executory process.
Art. 2636. Authentic evidence
The following documentary evidence shall be deemed to be authentic for purposes of executory process:
(1) The note, bond, or other instrument evidencing the obligation secured by the mortgage, security agreement, or privilege, paraphed for identification with the act of mortgage or privilege by the notary or other officer before whom it is executed, with the exception that a paraph is not necessary in connection with a note secured by a security agreement subject to Chapter 9 of the Louisiana Commercial Laws;
(2) A certified copy or a duplicate original of an authentic act;
(3) A certified copy of any judgment, judicial letters, or order of court;

*882 (4) A copy of a resolution of the board of directors, or other governing board of a corporation, authorizing or ratifying the execution of a mortgage on its property, certified in accordance with the provisions of R.S. 13:4103;
(5) A security agreement subject to Chapter 9 of the Louisiana Commercial Laws, which need not be executed or acknowledged before a notary.
(6) A certified copy of the limited liability company's articles of organization filed with the secretary of state or a written consent or extract of minutes of a meeting of the persons specified in R.S. 13:4103.1, in each case authorizing or ratifying the execution of an act of mortgage on its property and in the form required by R.S. 13:4103.1, certified as provided in R.S. 12:1317(C).
(7) A certified copy of the contract of partnership authorizing the execution of an act of mortgage filed for registry with the secretary of state.
(8) All other documentary evidence recognized by law as authentic.
Art. 2637. Evidence which need not be authentic
A. Evidence as to the proper party defendant, or as to the necessity for appointing an attorney at law to represent an unrepresented defendant, or of any agreement to extend or modify the obligation to pay or of written notification of default, or of the breach or occurrence of a condition of the act of mortgage, or of the security agreement, or privilege securing the obligation, or of advances made by the holder of a collateral mortgage note or note for future advances, or of an obligation secured under Chapter 9 of the Louisiana Commercial Laws, need not be submitted in authentic form. These facts may be proved by the verified petition, or supplemental petition, or by affidavits submitted therewith.
B. If a mortgage sought to be enforced secures the repayment of any advances for the payment of taxes, insurance premiums, or special assessments on, or repairs to, or maintenance of, the property affected by the mortgage or security agreement, the existence, date, and amount of these advances may be proved by the verified petition, or supplemental petition, or by affidavits submitted therewith.
C. If a mortgage sought to be enforced is a collateral mortgage on movable or immovable property, or if the security agreement sought to be enforced secured multiple or other and future indebtedness of the debtor, the existence of the actual indebtedness may be proved by the verified petition or supplemental petition, with the handnote, handnotes, or other evidence representing the actual indebtedness attached as an exhibit to the petition.
D. Evidence of a name change, merger, purchase and assumption, or similar disposition or acquisition, of a financial or lending institution may be proved by a verified petition or supplemental petition, or by an affidavit or affidavits submitted therewith by an appropriate officer of the successor entity.
E. Evidence of the name change or death of any party need not be submitted in authentic form, but may be proved by verified petition or supplemental petition, or by affidavit submitted therewith.
La. R.S. 10:9-629, which took effect on 1 July 2001,[2] provides further guidance on what constitutes "authentic evidence" for *883 the purposes of foreclosure via both executory and ordinary process:
§ 9-629. Judicial proceedings; authentic evidence
(a) Foreclosure. For purposes of executory or ordinary process seeking enforcement of a security interest and the obligation it secures:
(1) An authenticated record that contains a confession of judgment shall be deemed to be authentic for purposes of executory process.
(2) The negotiation, assignment, pledge, or other transfer in whole or in part of an obligation or of any right therein or thereto secured by a security interest may be proven by any record authenticated by the secured party or any person entitled to effect such a transfer, and such record shall be deemed authentic for purposes of executory process.
(3) The signatures of all debtors, makers, purchasers, payees, sellers, secondary obligors, or any other persons whose signatures purport to appear upon or be affixed to a written security agreement, instrument, negotiable document, chattel paper, general intangible, or other writing evidencing a security interest, or an obligation secured by a security interest, and the signatures of all secondary obligors, endorsers, assignors, pledgors or others whose signatures purport to appear upon or be affixed to any writing transferring rights in or to such a written security agreement, instrument, negotiable document, chattel paper, general intangible, or other security interest or obligation, are presumed to be genuine if the verified petition, or an affidavit attached thereto, for executory or ordinary process with which they are filed or in which they are identified, alleges or affirms that they are genuine to the best of the information, knowledge, or the belief of the plaintiff or affiant and no further evidence shall be required of such signatures for the purposes of executory or ordinary process.
(4) The authority and capacity of persons who purport to sign any written document or instrument described in subsections (a)(1) and (a)(2), in a representative capacity, shall be presumed if such persons' signatures are presumed genuine in accordance with the provisions of subsection (a)(3), or are proven in any other manner permitted by law and no further evidence of such authority or capacity is required for executory or ordinary process.
(5) The amount of any advances made, whether in written form or otherwise, or of other obligations secured by any security interest or agricultural lien, the terms of such obligations, insofar as they are relevant, the amount thereof due and unpaid, and the fact of the debtors' default may be proven by affidavit or verified petition.
(6) The affidavits or verified petitions referred to in subsections (a)(3), (a)(4), and (a)(5) may be based upon a plaintiff's or affiant's personal knowledge or upon information and belief based upon the records of the secured party, any assignee, or any other person that are kept or obtained in the ordinary course of business. The petition or affidavit need not particularize or specifically identify the records or data upon which such knowledge, information or belief is founded.
(b) Provisions not exclusive. The provisions of this section are cumulative *884 and shall not preclude proof in any other manner permitted by law of any fact for purposes of executory, ordinary, or other process seeking enforcement of security interests and agricultural liens, and the obligations they secure.
In order to stop the seizure and sale of property, the defendant may assert objections through an injunction proceeding, as set forth in La. C.C.P. arts. 2751-52, as follows:
Art. 2751. Grounds for arresting seizure and sale; damages
The defendant in the executory proceeding may arrest the seizure and sale of the property by injunction when the debt secured by the security interest, mortgage, or privilege is extinguished, or is legally unenforceable, or if the procedure required by law for an executory proceeding has not been followed.
Art. 2752. Injunction procedure
A. The petition for injunction shall be filed in the court where the executory proceeding is pending, either in the executory proceeding or in a separate suit. The injunction proceeding to arrest a seizure and sale shall be governed by the provisions of Articles 3601 through 3609 and 3612, except as provided in Article 2753. However, a temporary restraining order shall not issue to arrest the seizure and sale of immovable property, but the defendant may apply for a preliminary injunction in accordance with Article 3602. In the event the defendant does apply for a preliminary injunction the hearing for such shall be held before the sale of the property.
B. If the court finds that the temporary restraining order or preliminary injunction was wrongfully issued, the court, unless the proceedings are stayed, in addition to the damages authorized under Article 3608, may allow the sheriff to proceed with the sale by virtue of the prior advertisement, if not expired.
A writ of preliminary injunction may only be issued for certain reasons, as set forth in La. C.C.P. art. 3601, as follows:
Art. 3601. Injunction, grounds for issuance; preliminary injunction; temporary restraining order
An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law; provided, however, that no court shall have jurisdiction to issue, or cause to be issued, any temporary restraining order, preliminary injunction, or permanent injunction against any state department, board or agency, or any officer, administrator or head thereof, or any officer of the State of Louisiana in any suit involving the expenditure of public funds under any statute or law of this state to compel the expenditure of state funds when the director of such department, board or agency, or the governor shall certify that the expenditure of such funds would have the effect of creating a deficit in the funds of said agency or be in violation of the requirements placed upon the expenditure of such funds by the legislature.
During the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both, except in cases where prohibited, in accordance with the provisions of this Chapter.
Except as otherwise provided by law, an application for injunctive relief shall be by petition.
A preliminary injunction is an ancillary proceeding and the right to the permanent injunction must be proven before a preliminary injunction may issue. See Editors' Notes to La. C.C.P. art. 3601.
*885 In Diamond Services Corp. v. Benoit, XXXX-XXXX, pp. 5-8 (La.2/21/01), 780 So.2d 367, 370-72, the Supreme Court explained collateral mortgages as follows:
The collateral mortgage, though now recognized by statute, is a form of conventional mortgage that was developed by Louisiana's practicing lawyers and has long been recognized by Louisiana courts. Levy v. Ford, 41 La. Ann. 873, 6 So. 671 (La.1889); Merchants' Mut. Ins. Co. v. Jamison, 25 La. Ann. 363 (La.1873); Succession of Dolhonde, 21 La. Ann. 3, 1869 WL 4559 (La.1869). The collateral mortgage arose out of the need for a special form of mortgage to secure revolving lines of credit and multiple present and future cross-collateralized debts for which there was no provision in the Civil Code. David S. Willenzik, Future Advance Priority Rights of Louisiana Collateral Mortgages: Legislative Revisions, New Rules, and a Modern Alternative, 55 La. L.Rev. 1, 7 (1999). The collateral mortgage was designed" to create a mortgage note that can be pledged as collateral security for either a pre-existing debt, or for a debt created contemporaneously with the mortgage, or for a future debt or debts, or even for a series of debts." Max Nathan, Jr. & H. Gayle Marshall, The Collateral Mortgage, 33 La. L.Rev. 497 (1973). One advantage it holds for creditors is that liabilities are ranked from the date of the original pledge of the collateral mortgage note (assuming the mortgage has been recorded), rather than [XXXX-XXXX La. 6] from the date of the individual, subsequent advances. Further, the creditor is able to secure multiple present and future loans and obligations on a cross-collateralized basis.
This Court discussed the fundamentals of a collateral mortgage in First Guaranty Bank v. Alford, 366 So.2d 1299,1302 (La.1978), as follows:
A mortgage is an accessory right which is granted to the creditor over the property of another as security for the debt. La. Civ.Code arts. 3278, 3284. Mortgages are of three types: conventional, legal and judicial. La. Civ.Code art. 3286. Within the area of conventional mortgages, three different forms of mortgages are recognized by the Louisiana statutes and jurisprudence: an "ordinary mortgage" (La. Civ.Code arts. 3278, 3290); a mortgage to secure future advances (La. Civ.Code arts. 3292, 3293); and a collateral mortgage. See Thrift Funds Canal, Inc. v. Foy, 261 La. 573, 260 So.2d 628 (1972). Unlike the other two forms of conventional mortgages, a collateral mortgage is not a "pure" mortgage; rather, it is the result of judicial recognition that one can pledge a note secured by a mortgage and use this pledge to secure yet another debt.
A collateral mortgage indirectly secures a debt via a pledge. A collateral mortgage consists of at least three documents, and takes several steps to complete. First, there is a promissory note, usually called a collateral mortgage note or a"ne varietur" note. The collateral mortgage note is secured by a mortgage, the so-called collateral mortgage. The mortgage provides the creditor with security in the enforcement of the collateral mortgage note.
Up to this point, a collateral mortgage appears to be identical to both a mortgage to secure future advances and an ordinary mortgage. But a distinction arises in the collateral mortgage situation because money is not directly advanced on the note that is paraphed for identification with the *886 act of mortgage. Rather, the collateral mortgage note and the mortgage which secures it are pledged to secure a debt.
366 So.2d at 1302 (emphasis in original).
Pledge is an accessory contract by which one debtor gives something to a creditor as security for the debt. La. Civ.Code art. 3133; Texas Bank of Beaumont v. Bozorg, 457 So.2d 667, 671 n. 4 (La.1984). Invariably, the thing given as security for the debt is a movable, in which case the contract is more accurately called pawn. La. Civ.Code arts. 3134 and 3135. A person may give a pledge not only for his own debt, but also for that of another. La. Civ.Code art. 3141. The pledge secures only that debt or debts contemplated in the contract between the pledgor and pledgee. Alford, 366 So.2d at 1304 quoting Durham v. First Guaranty Bank of Hammond, 331 So.2d 563, 565 (La.App. 1st Cir.1976)); see also Peter S. Title, Louisiana Real Estate Transactions, Second Edition, § 14.9 (2000).
A collateral mortgage is not a "pure" mortgage; instead, it combines the security devices of mortgage and pledge into one. First Federal Savings & Loan Ass'n v. Moss, 616 So.2d 648, 654 (La. 1993). It is important to remember that the collateral mortgage does not directly secure a debt; instead, the collateral mortgage device "is designed to create a mortgage note for a fictitious debt that can be pledged as collateral security for a real debt." Bozorg, 457 So.2d at 671; see also David S. Willenzik, Louisiana Secured Transactions, § 2:13 (2000) ("The borrower's mortgage secures a fictitious collateral mortgage note, which is payable to bearer on demand. The collateral mortgage note is then pledged under a collateral pledge agreement to secure the borrower's true indebtedness under one or more hand notes."). Because the mortgagor, after executing the collateral mortgage and the collateral mortgage note, then pledges the collateral mortgage note as security for a debt, usually represented by a separate hand note, the collateral mortgage package combines the security devices of pledge and mortgage. Bozorg, 457 So.2d at 671 (citing Nathan & Marshall, The Collateral Mortgage, 33 La. L.Rev. at 498). (Footnotes omitted.)
We now turn to the documents at issue in this litigation, first addressing those attached to the original verified petition for executory process. Liberty is suing to collect on a promissory note (hand note) made by American Auto Sales, Inc. ("AAS"), as borrower, to Liberty, as lender, dated 16 August 1999, in the principal amount of $350,100.00. The note is signed by Delmont Dapremont, Jr., as President of AAS, and is secured by the following, as stated therein:
Detailed Collateral Description. 2ND DCM IN THE AMOUNT OF $300,000.00 DATED 6/18/97 ON PROPERTY LOCATED AT 7421 CHADBOURNE DRIVE AND A 1ST DCM IN THE AMOUNT OF $300M DATED 6/18/97 ON PROPERTY LOCATED AT 3962-64 PAUGER STREET, NEW ORLEANS, LA.
UCC-1 ON BLANKET INVENTORY OF AMERICAN AUTO SALES, INC CONSISTING OF ALL VEHICLES PRESENTLY OWNED OR TO BE ACQUIRED. [Emphasis in original.]
Also attached to the verified petition is a collateral mortgage note signed by Delmont Dapremont, Jr. and Joan Miller Dapremont, dated 18 June 1997, in the amount of $300,000.00. The collateral mortgage note states in pertinent part:

*887 ON DEMAND, THE UNDERSIGNED, WHETHER ONE OR MORE, JOINTLY, SEVERALLY AND SOLIDARILY PROMISE TO PAY TO THE ORDER OF BEARER, AT THE OFFICES OF LIBERTY BANK AND TRUST COMPANY, LENDING DIVISION, 3801 CANAL ST., NEW ORLEANS, LA. 70119, THE PRINCIPAL SUM OF THREE HUNDRED THOUSAND & 00/000 DOLLARS (U.S.$300,000.00) FOR VALUE RECEIVED, WITH INTEREST THEREON AT THE RATE OF 18.000 PERCENT PER ANNUM FROM DATE UNTIL PAID.

* * *
The maker(s) of the Note and all endorsers, guarantors and sureties hereon hereby severally waive presentment for payment, notice of nonpayment, protest, notice of protest, and all pleas of division and discussion, and agree that the time of payment hereof may be extended from time to time, one or more times, without notice of such extension or extensions and without previous consent, hereby binding themselves jointly, severally and solidarily, unconditionally and as original promisors, for the payment hereof, in principal, interest, costs and attorneys' fees. Furthermore, no discharge or release of any collateral securing this Note or any delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights, or to otherwise diminish or release such collateral.
This note is secured by a Collateral Real Estate Mortgage dated June 18, 1997, executed by the undersigned in favor of Liberty Bank and Trust Company, Lending Division, and any future holder or holders of this Note, with this Note being paraphed "Ne Varietur" for identification with said Collateral Real Estate Mortgage by Notary Public before whom said mortgage was passed. [Emphasis in original.]
The collateral mortgage on 7421 Chadbourne Drive, New Orleans, securing this collateral mortgage note is also dated 18 June 1997, and the mortgagors are identified at Delmont Dapremont, Jr. and Joan Dapremont. The borrower is listed as Delmont Dapremont, Jr., d/b/a American Auto Sales, and the lender/mortgagee is Liberty. The collateral mortgage states in pertinent part:
COLLATERAL MORTGAGE NOTE. Desiring to secure the prompt and punctual payment and satisfaction of any and all present and future indebtedness in favor of Mortgagee, as defined above, Mortgagor executed a certain Collateral Mortgage Note dated June 18, 1997, in the principal amount of U.S. $300,000.00, payable to the order of BEARER on demand, at the offices of Mortgagee, which note stipulates to bear interest at the rate of 18.000 percent per annum from the date until paid and is paraphed "Ne Varietur" for identification with this Mortgage by the Notary Public before whom this Mortgage is passed, a copy of which Note is attached hereto as an exhibit and is expressly made a part hereof by reference.
PLEDGE OF COLLATERAL MORTGAGE NOTE TO SECURE INDEBTEDNESS. The aforesaid Note, after having been paraphed "Ne Varietur" for identification with this Mortgage by the Notary Public before whom this Mortgage is passed, was delivered to Mortgagor, who hereby acknowledges receipt thereof. Mortgagor declared that said Note has been and/or will be pledged to Mortgagee as the initial Mortgagee under this Mortgage for the purpose of securing any and all present and future indebtedness that Borrower and/or *888 Mortgagor may obtain or incur, from time to time, one or more times, from Mortgagee and any subsequent holder or holders of said Note as heretofore stated.
GRANTING OF MORTGAGE TO SECURE PLEDGED NOTE. And now, in order to secure the prompt and punctual payment and satisfaction of the aforesaid Note, in principal, interest, costs, expenses, attorneys' fees and other fees and charges, and additionally to secure repayment of any and all Additional Advances that Mortgagee may make on behalf of Mortgagor as provided in this Mortgage, together with interest thereon, Mortgagor does by these presents specifically mortgage, affect and hypothecate unto and in favor of Mortgagee, any and all of Mortgagor's present and future rights, title and interest in and to the following described property.

* * *
The Real Property or its address is commonly known as 7421 CHADBOURNE DRIVE, NEW ORLEANS, LA 70126. [Emphasis in original.]
The mortgage also contains a "confession of judgment," in order to allow Liberty to proceed with foreclosure via executory process.
On 17 March 2000, Liberty filed a supplemental and amending verified petition for executory process to add Hilda Palao Dapremont and Elaine Dapremont Trotter as additional defendants. In addition, Liberty sought to foreclose on property located at 3962-64 Pauger Street, New Orleans, Louisiana pursuant to a second collateral mortgage note secured by a collateral mortgage on the aforesaid property, which had been used to secure the promissory note in the amount of $350,100.00 made by Delmont Dapremont, Jr. on behalf of AAS.
A review of these additional documents reveals that the collateral mortgage note in the amount of $300,000.00 is dated 18 June 1997, and was signed by Delmont Dapremont, Jr., as well as Hilda Palao Dapremont and Elaine Dapremont Trotter. The language contained in the collateral mortgage note is identical to the language quoted above from the collateral mortgage note signed by Joan and Delmont Dapremont, Jr. on the property at 7421 Chadbourne Drive. The collateral mortgage on 3962-64 Pauger Street lists Delmont Dapremont, Jr. d/b/a/ American Auto Sales as borrower/mortgagee, Liberty as lender, and Delmont Dapremont, Jr., Hilda Palao Dapremont, and Elaine Dapremont Trotter as mortgagors. The above language quoted from the mortgage on the Chadbourne property is identical to the language in the mortgage on the Pauger property, except for the description of the immovable property on which the mortgage is held.
Following remand of this case in December 2001, Liberty filed a second supplemental and amending verified petition, to which is attached four documents. The first is an unlimited guaranty, listing AAS as borrower, Liberty as lender, and Delmont Dapremont, Jr., as guarantor. The document contains the following language:
GUARANTEE OF BORROWER'S INDEBTEDNESS. Guarantor hereby absolutely and unconditionally agrees to, and by these presents does hereby, guarantee the prompt and punctual payment, performance and satisfaction of any and all of Borrower's present and future indebtedness in favor of Lender.

* * *
DETAILED COLLATERAL DESCRIPTION. 2ND DCM IN THE *889 AMOUNT OF $300,000.00 DATED 6/18/97 ON PROPERTY LOCATED AT 7421 CHADBOURNE DRIVE AND A 1ST DCM IN THE AMOUNT OF $300M DATED 6/18/97 ON PROPERTY LOCATED AT 3962-64 PAUGER STREET, NEW ORLEANS, LA.
UCC-1 ON BLANKET INVENTORY OF AMERICAN AUTO SALES, INC CONSISTING OF ALL VEHICLES PRESENTLY OWNED OR TO BE ACQUIRED. [Emphasis in original.]
The second document is an Acknowledgment of Pledge of Collateral Mortgage Note, dated 16 August 1999 in which the borrower is AAS, the lender is Liberty and the Grantors are Joan and Delmont Dapremont, Jr. This document states in pertinent part:
COLLATERAL MORTGAGE NOTE. Desiring to secure the prompt and punctual payment and satisfaction of any and all then present and future indebtedness as may be outstanding from time to time, one or more times, Grantor previously executed certain Collateral Mortgage Note or Notes, payable to the order of Bearer, on demand, at the offices of Lender, a copy or copies of which Note or Notes are attached hereto and are expressly made a part hereof by reference:
2ND DCM IN THE AMOUNT OF $300,000.00 DATED 6/18/97 ON PROPERTY LOCATED AT 7421 CHADBOURNE DRIVE, NEW ORLEANS, LA
PREVIOUS PLEDGE OF NOTE. Grantor acknowledges that Grantor previously pledged, granted a continuing security interest in and delivered Grantor's Note or Notes to Lender to secure the prompt and punctual payment and satisfaction of any and all present and future indebtedness. [Emphasis in original.]
The third document attached to the verified petition is a corporate resolution by Delmont Dapremont, Jr., as President of AAS and as the corporation's Secretary or Assistant Secretary of AAS, dated 16 August 1999. The resolution grants to Mr. Dapremont, as President of AAS, the specific authority to do the following on behalf of the corporation:
Loan. To negotiate and obtain a revolving line of credit from Lender in the amount of Three Hundred Fifty Thousand One Hundred & 00/100 Dollars (U.S.$350,100.00) under such terms and conditions as said officers or employees may agree to in their sole discretion, and for such additional sum or sums of money as in their judgment should be borrowed, without limitation.
Note. To execute and deliver to Lender a promissory note evidencing the Corporation's obligations and indebtedness under the aforesaid revolving line of credit.
Grant Security. To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender, as security for the payment of any loans or credit accommodations so obtained, any promissory notes so executed (including any amendments to or modifications, renewals, and extensions of such promissory notes), or any other or further indebtedness of the Corporation to Lender at any time owing, however the same may be evidenced, any property now or hereafter belonging to the Corporation or in which the Corporation now or hereafter may have an interest, including without limitation all real (immovable) property and all personal (movable) property and rights of the Corporation. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated, encumbered or otherwise secured at the time such loans are obtained or such indebtedness is incurred, or at any time or *890 times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated, encumbered or otherwise secured.
Security Agreements. To execute and deliver one or more mortgages, collateral mortgages, pledge agreements and other security agreements in favor of Lender to secure the prompt and punctual payment and satisfaction of the aforesaid revolving line of credit, under which said officers or employees may grant a continuing security interest in the property and/or the rights of the Corporation as more fully described therein, which mortgages, collateral mortgages, pledge agreements and other security agreements may contain provisions for foreclosure under Louisiana executory process procedures, confessions of judgment, waivers or appraisal and other rights and notices, all of which remedies upon default are specifically consented to by this Board of Directors. [Emphasis in original.]
The final document attached to the verified petition is a pledge of a collateral mortgage note in the principal amount of $75,021.00, dated 18 June 1997. The pledge is signed by Delmont Dapremont, Jr., Hilda Palao Dapremont, and Elaine Dapremont Trotter in favor of Liberty. The document indicates that the $75,021.00 note was being pledged to secure the collateral mortgage note in the amount of $300,000.00, executed and dated the same day, which was secured by a collateral mortgage, also dated 18 June 1997.[3]
We now turn to the trial court's reasons for issuing the writ of preliminary injunction. First, the trial court stated that Liberty failed to attach a pledge agreement by which the owners of the property at 3962-64 Pauger Street, New Orleans, Louisiana, pledged the collateral mortgage and collateral mortgage note to secure the $350,100.00 note, which represents the debt of the corporation. However, delivery of the promissory or "bearer" note itself constitutes the necessary pledge. No requirement exists that the pledge be contained in a separate document or that the pledge even be in writing.[4] *891 Pursuant to La. R.S. 10:9-310(b)(6), a creditor must have physical possession of a collateral mortgage note to perfect a security interest. Moreover, La. R.S. 9:5554 states that:
There is no requirement that there be a registry of:
(1) Any evidence of pledge of the written obligation secured by a collateral mortgage or a vendor's privilege.

* * *
(3) Any security interest in a collateral mortgage or vendor's privilege or written obligation secured by each.
This statute works in conjunction with La. C.C.P. art. 2637(C), which states that no need exists to have authentic evidence of the hand note, for "the existence of the actual indebtedness may be proved by the verified petition or supplemental petition, with the hand note, hand notes, or other evidence representing the actual indebtedness attached as an exhibit to the petition." In the instant matter, Liberty filed three verified petitions, which all state that the two $300,000.00 collateral mortgage notes were pledged by the defendants to secure the hand note.
We fail to find any deficiencies with Liberty's ability to proceed with foreclose by executory process. As per Diamond Services, supra, Liberty has produced two bearer collateral mortgage notes that are secured by collateral mortgages on two separate pieces of immovable property, that in turn were pledged by the maker as security for the contemporaneous debt of AAS. The Civil Code provides that a person may give a pledge not only for his own debt, but also for the debt of another. La. C.C. art. 3141.[5] Here, the mortgages on the Chadbourne and Pauger properties secured collateral mortgage notes, which are payable to bearer on demand. The notes were then pledged by the physical delivery to Liberty and in the collateral mortgages to secure AAS's true indebtedness under the $350,100.00 promissory note. Proof of the pledge is found by: (1) the bearer notes being in possession of Liberty; (2) the language of the collateral mortgage which contains a pledge of the collateral mortgage notes to secure the mortgages; and (3) the allegations contained in the verified petitions, as supplemented and amended, which allegations have never been disputed or denied by the defendants.[6] Consequently, we find no impediment to Liberty's seizure and sale of the properties in question by executory process.
The defendants have raised various arguments to support the trial court's entry of the writ of preliminary judgment, from which we discern three principal contentions. First, the defendants argue that the first appeal before this court provides a basis for the application of res judicata and/or the law of the case doctrine. Second, the defendants contend Liberty failed to attach a proper corporate resolution to any of its petitions. Finally, the defendants argue that the affidavits filed by Liberty to support executory process were not made upon personal knowledge. We address each argument separately.
*892 First, a writ of preliminary injunction is essentially an interlocutory order issued in a summary proceedings incidental to the main demand for permanent injunctive relief. It is designed to and serves the purpose of preventing irreparable harm by preserving the status quo between the parties pending a determination on the merits of the controversy. Bally's Louisiana, Inc. v. Louisiana Gaming Control Board, 99-2617, p. 7 (La.App. 1 Cir. 1/31/01), 807 So.2d 257, 263; Freeman v. Treen, 442 So.2d 757, 763 (La.App. 1 Cir.1983). The principal demand, as opposed to the injunction, is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the injunction may touch upon or decide issues regarding the merits. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488, 494 (La.1979). In order to plead res judicata, there must be a final judgment. Asnone exists in this case (i.e., a permanent injunction was not issued), this argument is without merit.
We also find no merit in the defendants' contention that the law of the case doctrine prohibits this appeal. Under the "law of the case" doctrine, an appellate court ordinarily will not reconsider its own rulings of the law in the same case. Evans v. Nogues, 99-2761, p. 4 (La.App. 4 Cir. 9/13/00), 775 So.2d 471, 474; Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 705 (La.App. 1 Cir.), writ denied, 605 So.2d 1099, 1100 (La.1992). However, the law of the case doctrine is a discretionary guide and is not applicable in cases of palpable error or where, if the law of the case doctrine were applied, manifest injustice would occur. Sharkey, 600 So.2d at 705.
In the instant case, our prior ruling merely held that Liberty had not met the strict requirements necessary to avail itself of executory process. Following remand, the trial court permitted Liberty to file an amending and supplemental erified petition for executory process and specifically found that it had not violated the first preliminary injunction by doing so. Here, there is no prior ruling for us to apply to the instant matter.
The defendants' assertion that the corporate resolution is invalid is equally meritless. Simply put, Mr. Dapremont did not mortgage corporate property; he mortgaged properties owned as an individual with his wife and siblings to secure a corporate debt. Consequently, the defendants' reliance on First Guaranty Bank v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834 (La.1987), is misplaced. We also note that La. C.C.P. art. 2636(4) requires a board of directors resolution only when the board is authorizing or ratifying the execution of a mortgage on the property of the corporation. In addition, even if Mr. Dapremont had improperly mortgaged corporate property, only the corporation would have standing to complain of his unauthorized act. Here, Liberty does not seek to foreclose on any property of the corporation, AAS.
Finally, we find no merit to the defendants' criticism of the affidavits submitted by Liberty. First, the defendants failed to challenge the affidavits before the trial court. Further, the affiant clearly states that he is personally familiar with the accounts at issue and the affidavits are based on his personal knowledge. Thus, the affidavits are sufficient.
However, we agree with the trial court's denial of the defendants' motion for contempt. As demonstrated above, Liberty was in good faith when it filed the second supplemental and amended verified petition for executory process.
Based on the foregoing, we find that Liberty has proven entitlement to proceed *893 by executory process. Therefore, we reverse the trial court in part, affirm the denial of the contempt motion, set aside the writ of preliminary injunction, and remand the matter for further proceedings consistent with this opinion. All costs of this appeal are assessed against the defendants.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] See La. C.C.P. art. 2636(4).
[2] See La. R.S. 10:9-701.
[3] Because Liberty is not seeking repayment of the $75,021.00 collateral mortgage note, it is irrelevant to these proceedings. However, we note the pledge of the $75,021.00 note states that it is "intended and shall secure any and all present and future indebtedness of Grantor and/or Borrower in favor of Lender, as may be outstanding from time to time...."
[4] The trial court stated that an "acknowledgment of pledge of the collateral mortgage note and collateral mortgage which secures the debt, executed by Delmont Dapremont, Jr., Hilda Palao Dapremont, and Elaine Dapremont Trotter" is missing from the record. However, such a document isnot required since the pledge is set forth in the promissory note (hand note) and was accomplished through delivery to Liberty. Further, a separate pledge is set forth in the collateral mortgage document itself.

It is elementary hornbook law in Louisiana that a pledge need not be in writing to be effective between the parties. See M. Truman Woodward, Jr.,Louisiana Notarial Manual, § 15.01 at p. 531 (2 ed.1962). The pledgee must be put in possession of the object of the pledge and actual delivery must be made to him. Id. at § 15.02 at p. 532. The pledge of a negotiable instrument before its maturity carries with it all the privileges by which the instrument is secured. Id. at § 15.03 at p. 533. Negotiable instruments may be pledged by mere delivery without the necessity of notice to the maker. The requirement of notice does not apply to the immediate parties to the contract of pledge and may only be invoked by third persons. Id. at § 15.04 at p. 533. A pledge is effective even as to third parties, though not recorded, if the pledgee acquires actual possession of the object before any conflicting claims or privileges have attached to it. Id. at § 15.06 at p. 534. (Citations of authorities omitted.)
[5] In addition, La. C.C. art. 3295 provides that a person may establish a mortgage over his own property to secure the obligation of another. That is what the defendants did in this case.
[6] Nowhere can we find a requirement that Liberty produce a separate document of pledge or an acknowledgment of pledge of the collateral mortgage note and collateral mortgage as required by the trial court in its reasons for judgment.