934 So.2d 206 (2006)
ELLIS CONSTRUCTION, INC.
v.
VIEUX CARRE RESORT PROPERTIES, L.L.C.
No. 2005-CA-1109.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 2006.
*208 Lloyd N. Shields, Daniel Lund, III, Richard A. Houston, III, Shields Mott Lund L.L.P., New Orleans, LA, for Plaintiff/Appellant.
Richard J. Tomeny, Jr., Becknell & Tomeny, Kenner, LA, for Defendant/Appellee.
(Court composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS JR., Judge EDWIN A. LOMBARD).
TERRI F. LOVE, Judge.
This appeal arises from a dispute between Ellis Construction, Inc. and Vieux Carre Resort Properties, L.L.C. regarding a condominium property located at 917 Toulouse Street. Vieux Carre Resort Properties, L.L.C. executed a collateral mortgage and security agreement in favor of Ellis Construction, Inc. to secure payment on a contract for the construction and remodeling of the 917 Toulouse Street property. Ellis Construction, Inc. filed a Petition for Executory Process to seek repayment of an alleged debt. Vieux Carre Resort Properties, L.L.C. filed a petition for preliminary injunction based on the arbitration clause in the construction contract. The trial court granted the preliminary injunction, ordered that all claims be submitted to arbitration, and arrested the seizure and sale of the 917 Toulouse Street property. We find that the trial court did not err by compelling arbitration based upon a binding arbitration clause and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Vieux Carre Resort Properties, L.L.C. ("Vieux Carre") entered into a construction contract ("Contract"), which contained an arbitration clause, with Ellis Construction, Inc. ("Ellis") for work to be performed on condominiums ("Condos") located at 917 Toulouse Street on July 6, 2000. Vieux Carre executed a Collateral Mortgage and Security Agreement ("Mortgage") and a Collateral Mortgage Note ("Ne Varietur Note"), paraphed by notary Stephen J. Broussard, in favor of Ellis on May 1, 2002, to secure payment for construction of the Condos. Vieux Carre confessed judgment and waived all notices, delays, and benefits granted by the Louisiana Civil Code in the Mortgage. The Mortgage was recorded on May 6, 2002. *209 The Ne Varietur Note was made payable to bearer in the amount of $500,000. Vieux Carre allegedly incurred a $71,823.70 debt to Ellis in conjunction with construction of the Condos. Vieux Carre formally demanded that Ellis submit the dispute to mediation and arbitration. Ellis refused.
Ellis filed a Petition for Executory Process seeking to seize and sell the Condos allegedly collaterally mortgaged by Vieux Carre. Ellis attached a certified copy of the Mortgage and the Ne Varietur Note to the verified petition, which stated that Vieux Carre owed a principal balance of $71,823.70. The trial court granted the order for seizure and sale of the Condos. Vieux Carre then filed a Petition for Preliminary Injunction and Permanent Injunction to Arrest Seizure and Sale of Property Under Executory Process and for Damages. Vieux Carre alleged the collateral mortgage documents were executed to secure another development project with no outstanding indebtedness. Vieux Carre also alleged the improper use of executory process because Ellis did not provide evidence of the debt and that it would suffer "immediate and irreparable harm." Vieux Carre then filed an Amended Petition for Preliminary Injunction and Permanent Injunction to Arrest Seizure and Sale of Property Under Executory Process and for Damages and Alternatively to Enforce Arbitration Provision and Alternatively Exception of Prematurity. Vieux Carre asserted that the debt was unliquidated and subject to mediation and arbitration.
After a hearing,[1] the trial court granted Vieux Carre's preliminary injunction, arrested the seizure and sale of the Condos, granted the motion to enforce arbitration, and ordered Ellis and Vieux Carre to submit the claims to binding arbitration. The trial court then granted Ellis' Motion and Order for Appeal from the judgment. Ellis asserts the trial court erred by granting the preliminary injunction and compelling the parties to binding arbitration.

STANDARD OF REVIEW
"An appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction...." La. C.C.P. art. 3612. Appellate courts review a trial court's granting of a preliminary injunction by determining if the trial court committed an error of law or if the granting was manifestly erroneous or clearly wrong. Saunders v. Stafford, 05-0205, p. 5 (La.App. 4 Cir. 1/11/06); 923 So.2d 751, 754. "[T]he petitioner must show that he is entitled to the relief sought and must establish a prima facie showing that he will prevail on the merits of the case." Id.
Judgments that compel arbitration "are not subject to an immediate appeal," but "supervisory relief may be appropriate under the facts and circumstances of a particular case." Sessions, Fishman & Nathan, L.L.P. v. Salas, 04-1790, 04-1467, pp. 5-6 (La.App. 4 Cir. 5/25/05); 905 So.2d 373, 377, citing Collins v. Prudential Ins. Co. of Am., 99-1423, pp. 6, 9 (La.1/19/00); 752 So.2d 825, 829, 831. However, due to the unique nature of the case involving the res nova legal interaction of a preliminary injunction, executory process, and an arbitration clause, we find this case merits appellate consideration.
"The determination as to whether to stay or compel arbitration is a question of law." Dufrene v. HBOS Mfg., LP, 03-2201, p. 2 (La.App. 4 Cir. 4/07/04); 872 So.2d 1206, 1209. A trial court's judgment which compels arbitration is reviewed under a two prong test: 1) is there a valid *210 arbitration agreement and 2) does the dispute "fall within the scope" of the agreement. Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc., 03-1662, p. 9 (La.App. 4 Cir. 3/17/04); 871 So.2d 380, 388.

ARBITRATION
Arbitration is a "substitute for litigation." Thomas v. Desire Cmty. Hous. Corp., 98-2097, p. 7 (La.App. 4 Cir. 7/19/00); 773 So.2d 755, 759. The party seeking to enforce an arbitration clause "may petition" the trial court and the trial court "shall issue an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." La. R.S. 9:4203. Louisiana law favors arbitration. La. R.S. 9:4201;[2]Aguillard v. Auction Mgmt. Corp., 04-2804, 04-2857, p. 6 (La.6/29/05); 908 So.2d 1, 7. The Louisiana Supreme Court held that a "presumption of arbitrability" exists. Aguillard, 04-2804, at p. 24, 908 So.2d at 18. The Court also stated that federal jurisprudence should provide "guidance in the interpretation of our provisions" because of the "strong and substantial similarities between our state arbitration provisions and the federal arbitration law." Id. at pp. 25-26, 908 So.2d at 18. The federal arbitration law adopts a "liberal ... policy favoring arbitration agreements." Id. at p. 7, 908 So.2d at 8-9. When the parties contractually agree to arbitration, they have validly selected an alternate forum (from a court) to determine the dispute between them.
The Contract between Ellis and Vieux Carre contains an arbitration clause that states, in pertinent part:
9.10 CLAIMS AND DISPUTES
9.10.1 Claims, disputes and other matters in question arising out of or relating to this Contract, including those alleging an error or omission by the Architect but excluding those arising under Paragraph 15.2, shall be referred initially to the Architect for decision. Such matters, except those relating to aesthetic effect and except those waived as provided for in Paragraph 9.11 and Subparagraphs 14.5.3 and 14.5.4, shall, after initial decision by the Architect or 30 days after submission of the matter to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.
9.10.4 Claims, disputes and other matters in question arising out of or relating to the Contract that are not resolved by mediation, ... shall be decided by arbitration....
This Court's review of the trial court's decision to compel arbitration involves a bifurcated analysis. First, neither party asserts that the Contract or the arbitration clause is invalid. Both parties agreed to and signed the Contract containing the arbitration clause. It is therefore binding upon them. Second, Ellis' claim for money allegedly owed as a result of the construction performed on the Condos is within the scope of the arbitration clause. The clause contains broad language that encompasses "[c]laims, disputes and other matters in question arising out of or relating to the *211 Contract." Thus, given the strong presumption in favor of upholding arbitration agreements and the fact that the debt dispute is covered by the arbitration clause, we do not find that the trial court committed error by compelling arbitration.[3]
Once the trial court finds a valid arbitration agreement, Louisiana law provides a remedy for the party seeking arbitration.
"If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement...."
La. R.S. 9:4202. We do not find that the trial court erred by arresting the seizure and sale of the Condos.

COLLATERAL MORTGAGE
A collateral mortgage recognizes that a mortgagor "can pledge a note secured by a mortgage ... to secure another mortgage." Diamond Servs. Corp. v. Benoit, 00-0469, p. 6 (La.2/21/01); 780 So.2d 367, 371. A collateral mortgage note and a collateral mortgage are executed to pledge as collateral for a "pre-existing debt," a future debt, or a "series of debts." Max Nathan, Jr. and H. Gayle Marshall, The Collateral Mortgage, 33 LA. L.REV. 497, 498 (1973).
There are four requirements to create a collateral mortgage. First, the mortgagor executes an "act of mortgage, acknowledging an indebtedness in the act of mortgage," and states "that he intends to use the `mortgage note' to raise funds." Id. at 499. Second, the mortgagor "executes a promissory note that is generally payable to `Bearer.'" Id. at 500. This note is called a "ne varietur" note or a collateral mortgage note. Diamond, 00-0469, p. 6, 780 So.2d at 371. Third, the mortgagor pledges the "ne varietur" note as collateral to secure the "true debt." Max Nathan, Jr. and H. Gayle Marshall, The Collateral Mortgage, 33 LA. L.REV. 497, 502 (1973). Evidence of the pledge is not required to be in writing. Liberty Bank and Trust Co. v. Dapremont, 02-1504, p. 20 (La.App. 4 Cir. 2/11/03); 844 So.2d 877, 890. The pledge can be confected by the delivery of the "ne varietur" note. Fourth, there must be evidence of the true indebtedness. Liberty, 02-1504, p. 21, 844 So.2d at 891. The true debt can be evidence by a hand note. Max Nathan, Jr. and H. Gayle Marshall, The Collateral Mortgage, 33 LA. L.REV. 497, 502 (1973). However, the debt may also be proven by a verified or supplemental petition or "other evidence representing the actual indebtedness." La. C.C.P. art. 2637(C). Thus, the act of mortgage and the "ne varietur" note combine to act as collateral for a debt just like stock, bonds, or property.
On May 1, 2002, Vieux Carre executed the Mortgage and Ne Varietur Note. The Mortgage references the Ne Varietur Note and states that it pertains to the Condos. The Mortgage also states that it was confected to "secure any obligation of the Mortgagor now existing or hereafter arising." Vieux Carre waived the benefit *212 of appraisal, demand, the three-day delay, notice of seizure, division, discussion, and any other benefits provided by Louisiana law. The Ne Varietur Note is in the amount of $500,000, is payable to bearer, and is paraphed for indentification with the Mortgage.
Vieux Carre's debt allegedly arose from construction work completed at the Condos. The Mortgage encompasses this debt because it is "any obligation" of Vieux Carre "hereafter arising." Thus, Ellis possesses a perfected collateral mortgage that secures the alleged debt of $71,823.70, as stated in the Petition for Executory Process.

EXECUTORY PROCESS
Executory process is "used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon...." La. C.C.P. art. 2631. It is a "unique and harsh remedy requiring strict construction." Moore v. La. Bank & Trust Co., 528 So.2d 606, 609 (La.App. 2 Cir. 5/4/88), citing Myrtle Grove Packing Co. v. Mones, 226 La. 287, 76 So.2d 305, 306 (1954). The plaintiff must prove his right to use executory process by submitting a petition asking for the seizure and sale of the mortgaged property with authentic evidence of: (1) the note or other instrument which evidences the obligation secured by the mortgage and (2) the authentic act of mortgage that imports a confession of judgment. La. C.C.P. art. 2634; La. C.C.P. art. 2635. A certified copy or a duplicate original of the authentic act or a certified copy of the note, paraphed with the mortgage, are considered authentic evidence. La. C.C.P. art. 2636. "An authenticated record that contains a confession of judgment shall be deemed to be authentic for purposes of executory process." La. R.S. 10:9-629(a)(1). Evidence of the "actual indebtedness" secured by the collateral mortgage need not be authentic and may be proven by the verified petition. La. C.C.P. art. 2637(C). The verified petition "may be based upon plaintiff's or affiant's personal knowledge or upon information and belief based upon the records ... kept or obtained in the ordinary course of business." La. R.S. 10:9-629(a)(6). The information in the verified petition does not have to specify upon which "records or data" the indebtedness information is based. La. R.S. 10:9-629(a)(6).
Vieux Carre avers that Ellis did not follow the proper procedure for executory process. Ellis attached a certified copy of the Mortgage, containing a confession of judgment, and the Ne Varietur Note, paraphed to the Mortgage, to the verified Petition for Executory Process. Ellis alleged that Vieux Carre owed it a "principal balance" of $71,823.70. The statement of the alleged debt in the verified petition is sufficient to satisfy Louisiana requirements as evidence of the true indebtedness, pursuant to La. R.S. 10:9-629. Thus, Ellis was entitled to the use of executory process on the collateral mortgage. However, this case presents a res nova issue of the interaction of the right to executory process and a contract containing an arbitration clause. Therefore, we proceed with our analysis.

PRELIMINARY INJUNCTION
The defendant may use an injunction to arrest the seizure and sale of property if: 1) "the debt secured by the security interest, mortgage, or privilege is extinguished;" 2) the debt is not legally enforceable; or 3) the procedure for executory process has not been followed. La. C.C.P. art. 2751. An injunction proceeding seeking to arrest the seizure and sale by executory process "shall be governed by the provisions of Articles 3601 through 3609 and 3612, except as provided in Article 2753." La. C.C.P. art. 2752(A). "An injunction shall be issued in cases where *213 irreparable injury, loss, or damage may otherwise result...." La. C.C.P. art. 3601. "Irreparable injury means the applicant cannot be adequately compensated in money damages for his injury or suffers injuries which cannot be measured by pecuniary standards." HCNO Servs., Inc. v. Secure Computing Sys., Inc., 96-1753, 96-1693 (La.App. 4 Cir. 4/23/97); 693 So.2d 835, 842.
An injunction in a proceeding for executory process is based upon the three grounds stated above. None of the three grounds exist in this case. However, the preliminary injunction is also issued to prevent irreparable injury, as referenced in La. C.C.P. art. 2752(A). Thus, this Court must determine if Vieux Carre would suffer irreparable injury without issuance of the preliminary injunction. Stephen Broussard's affidavit, the notary public who paraphed the Ne Varietur Note, asserts that third parties now own the Condos. Thus, Vieux Carre would not only suffer immediate monetary damages, it could also suffer injuries to its business reputation. This type of injury can also be measured by pecuniary standards. Therefore, this case does not meet the qualifications for a preliminary injunction. However, pursuant to La. R.S. 9:4202, Vieux Carre is entitled to a stay in the seizure and sale of the Condos because of the suspensive condition before executory process may commence, to-wit, arbitration of the amount owed by Vieux Carre, if any. Therefore, we find the trial court did not err in granting the preliminary injunction.
This case presents res nova issues for consideration by this Court. Although executory process is intended to grant accelerated relief to creditors without a trial, both Vieux Carre and Ellis signed the Contract containing the arbitration clause. Thus, both parties created an additional legal remedy in the Contract. The Louisiana Civil Code recognizes wide discretion for individual contractual freedom.[4] Thus, parties may contract in their own terms as long as the terms or object of the contract are not illegal or specifically prohibited by statute. Parties may contractually give up or add legal remedies not specifically provided for or prohibited by statute. Vieux Carre did this by waiving all remedies and delays in its collateral mortgage.
The right to use executory process is contractual. Parties must execute a series of specific documents, pursuant to Louisiana law, to create that right. The Louisiana Civil Code provides for some instances where parties cannot contract around specific statutes. See La. C.C. art. 3471. However, Louisiana statutes do not prohibit parties from contracting around the use of executory process. "In the absence of legislative intent to the contrary, we find no reason to limit the ability of contractual freedom of the parties...." Guidroz v. Lewis, 626 So.2d 736, 738 (La.App. 5 Cir.1993). Therefore, we find that both parties knew that any claims or disputes would be submitted to arbitration regardless of Ellis' right to use executory process. Accordingly, considering Louisiana's strong preference of upholding arbitration clauses and both parties' contractual freedom, we find that the trial court did not err.

DECREE
For the reasons stated above, we affirm the decision of the trial court.
AFFIRMED.
NOTES
[1] The transcript of the hearing is not contained in the record on appeal.
[2] La. R.S. 9:4201: Validity of arbitration agreements

A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time if the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
[3] The record does not contain reasons for the trial court's judgment. Therefore, it is unclear whether the trial court compelled arbitration strictly to liquidate Vieux Carre's debt or to fully settle the dispute. At a minimum, we find that the arbitration will determine the amount of the debt, if any, for executory process may only be determined in a judicial proceeding.
[4] La. C.C. art. 1971: Freedom of parties

Parties are free to contract for any object that is lawful, possible, and determined or determinable.